HUNTER, Appellant, vs. HATHAWAY, Respondent.

*December 13, 1900 — January 8, 1901.*

*Landlord and tenant: Agreement to put house in good condition: Counter-claim for breach: Amendment: Tort or contract? Agency: Damages: Evidence: Merger of prior negotiations in lease: Implied covenants.*

1. In an action to recover rent defendant counterclaimed upon a promise made prior to the leasing to put the premises in first-class condition, alleging insufficiency of the heating apparatus as a breach. The counterclaim was amended so as to allege that prior to the leasing plaintiff had knowingly made false statements as to the sufficiency of such heating apparatus, to induce defendant to enter into the lease, and that defendant relied thereon. *Held*, that this was not intended to change the cause of action to one in tort, but merely to negative any inference of intended waiver of the alleged pre-existing contract as a result of the making of the lease.

2. The alleged promise to put the premises in first-class condition was made by a real-estate agent who had been asked by plaintiff to find a tenant for the house and whom defendant had asked to find a house for him, but there was no evidence that plaintiff had authorized the making of such promise or even knew of it. *Held*, that there could be no recovery thereon.

3. The evidence as to damages in support of such a counterclaim should show not merely that defendant was inconvenienced in or deprived of the use of a part of the house, or that he burned a large amount of coal, because of the insufficiency of the heating apparatus, but should show the effect of such inconvenience or deprivation on the rental value of the premises, and the value of the extra coal consumed.

4. It appeared, in such case, that the letter of the agent which contained the promise that plaintiff would put the house in first-class condition was a mere preliminary proposal, and that after further negotiations the parties "concluded a bargain" and, after the work on the house was completed, executed a lease for more than three years. *Held*, that all previous negotiations were merged in the lease, and that under sec. 2204, Stats. 1898, no covenants as to the condition of the house were implied therein; so that there was no contract to support the counterclaim.

APPEAL from a judgment of the superior court of Milwaukee county: ORREN T. WILLIAMS, Judge. *Reversed.*

Some time in the month of June, 1895, defendant, desiring to take up his residence in Wauwatosa, applied to a real-estate agent (Sanford) to find him a house. Plaintiff, having a vacant house, had requested Sanford to find her a tenant. Sanford, on June 17th, wrote *Hathaway:* "I saw the Moor family. They will rent house for five years as is at $18.00 per month. If they add any more repairs and c., they will ask more rent. They will set a price when they hear what is wanted to be done to the property. The Hunters will put their house in A1 order, and charge $25.00 per month. I saw both Mr. & *Mrs. Hunter* this a. m." Sanford testifies that he notified *Hathaway* by that letter, whereupon Mrs. Hathaway came down and looked at the house. "We concluded a bargain, and the doctor rented it." Thereupon the plaintiff proceeded to put the house in order,—papering, painting, etc.,— and *Hathaway* moved in before the painting was completed; and a few weeks afterwards, when the work of putting house in order was apparently all done, executed a lease, dated back to July 1st, for four years and ten months, at $300 a year, payable monthly. The furnace, under *Hathaway's* management, proved unsatisfactory, and he suffered from cold and inconvenience, and was unable to heat more than a part of the house. Nevertheless, he remained in the house three winters, until April, 1898, when, against plaintiff's protest, he vacated. This action was to collect the next month's rent.

Defendant set up by way of defense that plaintiff agreed to put the house in first-class condition, and that she failed to do so, in that the furnace was inadequate. He also pleaded a counterclaim alleging the same agreement, and the insufficiency of the heating apparatus as a breach thereof, and claimed damages in the sum of $200. Upon the trial he was allowed to amend both the answer and counterclaim by al-

_eging that plaintiff, prior to making the lease, represented and warranted that the furnace and heating apparatus were sufficient and had never given plaintiff any trouble, which representation was made to induce defendant to enter into the lease, and was relied on by him; and that plaintiff at the time of making said representation and warranty knew the same was untrue.    Allowance of this amendment was excepted to.    Defendant offered evidence tending to show inadequacy of the furnace, and inability to comfortably use a considerable portion of the house during cold weather; also, that after the repairs were completed, having learned from former tenants that they had trouble in heating the house, he asked the plaintiff with reference to the furnace, to which she replied that she never had any trouble with it. No evidence of the falsity of this statement was offered except that Hugh Ryan, while occupying the house, believed that he made complaint to her, about which she did nothing.    No evidence was offered of the rental value of the house either in good condition or in the condition in which defendant found it, nor was any given of other specific money damage.    Neither was any evidence offered of the authority of Sanford to write the letter of June 17th, nor of any knowledge thereof on the part of the plaintiff.

Plaintiff objected to any evidence under the counterclaim, and moved for direction of a verdict in her favor, both of which motions were overruled.    The court submitted and answered questions as to amount of rent due, $27.62.    He also submitted to the jury a second question, to wit: "Subject to the opinion of the court as to defendant's right to recover, what damage, if any, has the defendant sustained by reason of the failure of the furnace in question to properly heat the house during the time that a furnace was necessary to be used?" to which the jury answered, $150. No further verdict was taken.    Thereupon defendant moved for judgment notwithstanding the verdict, and moved to

set aside the answer to the second question, and moved for a new trial, which motions being overruled the court ordered judgment in plaintiff's favor for the amount of the rent and in defendant's favor for $150 damages, and judgment was accordingly entered in favor of defendant for $122.38, from which this appeal.

For the appellant there was a brief by *Nath. Pereles & Sons*, attorneys, and *Guy D. Goff*, of counsel, and oral argument by *Mr. Goff*.

For the respondent there was a brief by *Wheeler & Perry*, and oral argument by *L. G. Wheeler*.

DODGE, J.   The counterclaim in this case was obviously grounded on contract. It alleged an agreement substantially in accord with the letter from Sanford to *Hathaway*, and we construe it as unchanged in this respect by the amendment permitted on the trial alleging that prior to making the lease certain false statements were knowingly made by plaintiff and relied on by defendant. It would not have been proper, under the circumstances, for the court to have permitted an amendment changing the cause of action from contract to tort.   *Kewaunee Co. v. Decker*, 34 Wis. 378; *Kruschke v. Stefan*, 83 Wis. 373.   And indulging, as we must, in all reasonable presumptions in favor of proper action, we must assume that this amendment was inserted not to state a new cause of action founded upon deceit, but to prevent the inference of an intended waiver of the alleged pre-existing contract as a result of the making of the lease.   We are confirmed in this view by respondent's own contention in his brief on this appeal that such was the only purpose of the amendment.   We need not, therefore, decide whether a cause of action founded upon said false statements could at any stage have been pleaded as a counterclaim to plaintiff's cause of action for rent.   So viewing the complaint, it is obvious that the evidence wholly fails to establish any cause of action in defendant's favor, first, for

Hunter vs. Hathaway.

the reason that there was no word of evidence that Sanford had any authority from plaintiff to write the letter of June 17th, or to make any such promise as is contained therein, nor is there any evidence that plaintiff afterwards assented to or ratified either such letter or promise; indeed, none that she ever knew any such had been written or made.

Again, judgment in favor of defendant on the counterclaim fails of any support in the evidence as to damages. True, it was shown that defendant was inconvenienced in or deprived of the use of some rooms in the house during some period of time each winter, and that he burned a large amount of coal; but he offered the jury no evidence as to the effect of such inconvenience or deprivation upon the rental value of the premises. As to that as an element of damage the jury were left wholly in a field of conjecture, with no evidence to guide them as to the amount which might be allowed therefor. The same is true both with reference to any excessive quantity of coal that might have been consumed or the value thereof,— both are left by the evidence wholly indefinite.

Deeper, however, than these defects in the trial is the consideration that any such statement as that embodied in Sanford's letter of June 17th is obviously no more than mere preliminary proposal and negotiation leading up to the ultimate transaction of renting the house; and, since that transaction was reduced to writing in the form of a lease, all previous negotiations or proposals were merged therein. *Cooper v. Cleghorn*, 50 Wis. 113, 123; *Hubbard v. Marshall*, 50 Wis. 322, 326; *Moulton v. Kershaw*, 59 Wis. 316; *Lyman v. Robinson*, 14 Allen, 242, 254; *Lawrence v. Dale*, 3 Johns. Ch. 23; *Renard v. Sampson*, 12 N. Y. 561. The language of the letter itself indicates that the basis on which the parties approached each other was that of negotiation merely. The letter is incomplete as to terms, for no length of rental is mentioned, and the indefiniteness of the terms as to the other house could have been significant of no other purpose

than to invite further negotiations. This understanding of the situation is confirmed by the conduct of the defendant, who afterwards looked at the house, "concluded a bargain," and rented, and entered into a lease. At that time the work was all done. Defendant did not proceed on the theory that he had an enforceable contract that the heating apparatus *should* be made all right, but, before making the lease, inquired as to the existing fact.

Clearly, therefore, admission in evidence of this letter from Sanford was error; but, being admitted, it had no tendency to prove any contract additional to or different from the lease. That instrument being for more than three years, no covenants as to the condition of the house were implied. Sec. 2204, Stats. 1898; *Koeber v. Somers, ante,* p. 497. There was, therefore, no contract proved to support the counterclaim, and the court should have granted plaintiff's motion to direct a verdict in her favor.

Errors are assigned upon the judge's charge, which occupies several pages and extends over the rules of law governing the liability of defendant for rent and that of the plaintiff for false representations; covering, too, the conduct of the jury in deciding whether representations were made, whether they were false, etc., and whether they had been waived. We need not, however, consider appellant's criticisms of these instructions, for the court did not submit to the jury any questions to which they could relate. Those instructions are of no materiality except, perhaps, as indicating the mental processes of the trial judge in reaching his decision in favor of defendant upon the counterclaim. That decision we have already found to be wrong for other reasons, and may forego discussion of the rules of law promulgated in the charge.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.

BARDEEN, J., took no part.