PINES and others, Respondents, v. PERSSION, Appellant.

*October 5—October 31, 1961.*

For the appellant there was a brief by *Wilkie, Anderson, Bylsma & Eisenberg* of Madison, and oral argument by *Donald S. Eisenberg.*

For the respondents there was a brief by *Immell, Herro, Buehner & DeWitt,* and oral argument by *Duane P. Schumacher* and *Robert D. Martinson,* all of Madison.

MARTIN, C. J.   We have doubt that sec. 234.17, Stats., applies under the facts of this case. In our opinion, there was an implied warranty of habitability in the lease and that warranty was breached by the appellant.

There is no express provision in the lease that the house was to be in habitable condition by September 1st. We cannot agree with respondents' contention that the provision for "including furniture to furnish the said house suitable for student housing" constitutes an express covenant that the house would be in habitable condition. The phrase "suitable for student housing" refers to the "furniture" to be furnished and not to the general condition of the house.

Parol evidence is inadmissible to vary the terms of a written contract which is complete and unambiguous on its face. *Hunter v. Hathaway* (1901), 108 Wis. 620, 84 N. W. 996; 32 Am. Jur., Landlord and Tenant, pp. 134, 137, secs. 130, 134.

The general rule is that there are no implied warranties to the effect that at the time a lease term commences the premises are in a tenantable condition or adapted to the purposes for which leased. A tenant is a purchaser of an

estate in land, and is subject to the doctrine of *caveat emptor*. His remedy is to inspect the premises before taking them or to secure an express warranty. Thus, a tenant is not entitled to abandon the premises on the ground of un-inhabitability. See 1 American Law of Property, p. 267, sec. 3.45; 32 Am. Jur., Landlord and Tenant, p. 233, sec. 247.

There is an exception to this rule, some courts holding that there is an implied warranty of habitability and fitness of the premises where the subject of the lease is a furnished house. This is based on an intention inferred from the fact that under the circumstances the lessee does not have an adequate opportunity to inspect the premises at the time he accepts the lease. See 1 American Law of Property, p. 267, sec. 3.45; 35 New York University Law Review, 1279, 1283–1287; *Collins v. Hopkins* (1923), 2 K. B. 617, 34 A. L. R. 703, 705. In the *Collins Case* the English court said:

"Not only is the implied warranty on the letting of a furnished house one which, in my own view, springs by just and necessary implication from the contract, but it is a warranty which tends in the most-striking fashion to the public good and the preservation of public health. *It is a warranty to be extended rather than restricted.* [Emphasis supplied.]"

See also *Delamater v. Foreman* (1931), 184 Minn. 428, 239 N. W. 148; *Ingalls v. Hobbs* (1892), 156 Mass. 348, 31 N. E. 286.

We have not previously considered this exception to the general rule. Obviously, however, the frame of reference in which the old common-law rule operated has changed.

Legislation and administrative rules, such as the safe-place statute, building codes, and health regulations, all impose certain duties on a property owner with respect to the condition of his premises. Thus, the legislature has made

a policy judgment—that it is socially (and politically) desirable to impose these duties on a property owner—which has rendered the old common-law rule obsolete. To follow the old rule of no implied warranty of habitability in leases would, in our opinion, be inconsistent with the current legislative policy concerning housing standards. The need and social desirability of adequate housing for people in this era of rapid population increases is too important to be rebuffed by that obnoxious legal cliché, *caveat emptor*. Permitting landlords to rent "tumble-down" houses is at least a contributing cause of such problems as urban blight, juvenile delinquency, and high property taxes for conscientious landowners.

There is no question in this case but that the house was not in a condition reasonably and decently fit for occupation when the lease term commenced. Appellant himself admitted it was "filthy," so much so that he lied about owning it in the first instance, and he testified that no cleaning or other work was done in the house before the boys moved in. The filth, of course, was seen by the respondents when they inspected the premises prior to signing the lease. They had no way of knowing, however, that the plumbing, heating, and wiring systems were defective. Moreover, on the testimony of the building inspector, it was unfit for occupancy, and:

"The state law provides that if the building is not in immediate danger of collapse the owner may board it up so that people cannot enter the building. His second choice is to bring the building up to comply with the safety standards of the code. And his third choice is to tear it down."

The evidence clearly showed that the implied warranty of habitability was breached. Respondents' covenant to pay rent and appellant's covenant to provide a habitable house were mutually dependent, and thus a breach of the latter by appellant relieved respondents of any liability under the former.

Since there was a failure of consideration, respondents are absolved from any liability for rent under the lease and their only liability is for the reasonable rental value of the premises during the time of actual occupancy. That period of time was determined by the trial court in its finding No. 9, which is supported by the evidence. Granting respondents' motion for review, we direct the trial court to find what a reasonable rental for that period would be and enter judgment for the respondents in the amount of their deposit plus the amount recoverable for their labor, less the rent so determined by the court.

*By the Court.*—Cause remanded with instructions to enter judgment for the respondents consistent with this opinion. Respondents may tax double costs in this court for appellant's failure to comply with Supreme Court Rule 6 (3), sec. 251.26, Stats., as to inclusion of record or appendix page references in the statement of facts.