324 So.2d 484 (1975)
Robert B. REED et al., Plaintiffs-Appellees,
v.
CLASSIFIED PARKING SYSTEM et al., Defendants-Appellants.
No. 12779.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1975.
Rehearing Denied January 6, 1976.
*485 Wiener, Weiss & Wiener and Cook, Clark, Egan, Yancey & King by Sidney E. Cook, Shreveport, for defendants-appellants-John B. Hutchinson and Bessie Lee Hutchinson.
Blanchard, Walker, O'Quin & Roberts by Neilson S. Jacobs, Shreveport, for defendant-appellant-Classified Parking System.
James A. Van Hook and Billy R. Pesnell, Shreveport, for plaintiffs-appellees-Robert B. Reed, Rutledge H. Deas, Jr. and Shreve Park, Inc.
Before HALL, GLADNEY and HEARD, JJ.
En Banc. Rehearing Denied January 6, 1976.
HALL, Judge.
In a previous suit between the same plaintiffs (sublessees) and the same defendants (lessor and sublessor) judgment was rendered by the Court of Appeal canceling and declaring of no further force and effect a lease and a sublease because of a breach of the lessors' obligation to replace equipment and to repair structural defects in the leased premises. Reed v. Classified Parking System, 232 So.2d 103 (La.App.2d Cir. 1970), writ refused. In the present suit the sublessee seeks damages against the sublessor and lessor for breach of the lease and sublease contracts in an amount equal to the difference between the rent actually paid under the terms of the sublease by sublessee and the fair rental value of the premises from March 2, 1965, the date suit was filed to cancel the lease, through May 8, 1970, the date the premises were vacated after judgment cancelling the lease. After trial on the merits the district court rendered judgment in favor of plaintiffs in the amount of $116,926.15, less credits of $1,612.56, together with five percent interest thereon from the date of each rental payment until paid. All defendants appealed. For the reasons set forth in this opinion, we reverse the judgment of the district court and render judgment rejecting plaintiffs' demands.
Background
Defendants, Mr. and Mrs. John Hutchinson, owned and operated The Auto Hotel, a multistory parking garage on Edwards Street in Shreveport, for many years. On May 15, 1956, the Hutchinsons leased the premises to defendant Classified Parking System, a corporation, for the purpose of operating an automobile parking and storage garage. On December 1, 1958, Classified subleased the premises to the plaintiffs, Robert B. Reed and Rutledge H. Deas, Jr., for the same purpose. Plaintiff, Shreve Park, Inc., is a corporation formed by Reed and Deas to operate the garage.
As a practical matter, the sublessor Classified is and has been merely a conduit in the course of the litigation between the parties, the real controversy being between plaintiffs and the Hutchinsons. To facilitate discussion of the issues in this opinion, plaintiffs are sometimes referred to as lessee, the Hutchinsons as lessor, and both the lease and sublease as the lease or lease contract.
On March 2, 1965, plaintiffs filed suit seeking cancellation of the lease because of failure of the lessor to comply with the lessor's obligations under the lease contract in regard to maintenance of the premises. The suit for cancellation was defended on the basis that the responsibility for the items complained of rested on the plaintiffs under the lease contract. The district court rejected plaintiffs' demands to cancel. The Court of Appeal reversed. The court found that the manlift, an essential item of equipment in operating a first class parking garage, was completely worn out and under the terms of the lease contract the *486 lessor was required to replace worn out equipment. The court further found that it was the lessor's responsibility to replace the leaking roof which amounted to a structural defect and which was resulting in damage to the premises. The court held that plaintiffs proved the lessor had failed or refused to comply with the lessor's obligations under the lease and that the lessee had been seriously disturbed in his possession or that the premises no longer served the use for which they were leased. Judgment was rendered canceling the sublease and lease and decreeing same to be of no further force and effect. The judgment became final in May, 1970, and on May 8, 1970, the premises were vacated by plaintiffs. From the time the suit for cancellation was filed in March, 1965, until the premises were vacated in May, 1970, plaintiffs remained in possession of the premises, continuing to operate a parking garage, and paid the rental specified in the lease contract, which rental totalled approximately $155,000.00 over that period of time.
On December 14, 1971, plaintiffs brought the instant suit against the Hutchinsons and Classified, seeking a money judgment for the difference between the rental actually paid by plaintiffs from March, 1965, through May 8, 1970, and the fair rental value of the premises during that period. Plaintiffs alleged the fair rental value for the period to be approximately $40,000.00 and the difference to which they are entitled to be approximately $115,000.00.
Defendants filed a dilatory exception of vagueness, peremptory exception of no cause of action, and peremptory exception of res judicata, all of which were overruled. Defendant Classified filed a third party demand against the Hutchinsons, seeking judgment over against third party defendants for any amount recovered by plaintiffs. Trial was had on the merits.
At the trial on the merits plaintiffs' evidence was directed primarily toward proof, by expert witnesses, of the fair rental value of the premises, in their deteriorated condition, during the period the previous suit for cancellation was pending. Plaintiffs did not seek to prove and do not seek to recover damages such as loss of profits, additional expense caused by the defects in the premises, inconvenience, or the like. The entire thrust of plaintiffs' case is that they are entitled to damages for defendant's breach of the lease contract and that the proper measure of damages is the difference between the rent actually paid and the fair rental value during the pendency of the previous suit, this being the difference between what plaintiffs paid for and what they actually received.
The district court, in written opinions rendered in connection with overruling the exceptions and on the merits, held for the plaintiffs, holding that the lessor was entitled to only the fair rental value of the premises after March, 1965, which the district court considered to be the effective date of cancellation of the lease. The district court held plaintiffs are entitled to recover the "over-payment" made by them during that period of time.
Contentions of the Parties
The contentions made by defendants-appellants on appeal may be summarized as follows:
(1) Plaintiffs are barred from proceeding with this suit for damages by principles of res judicata in that the present suit involves the same parties, the same cause of action, and the same demand as the prior litigation.
(2) Plaintiffs are barred from proceeding with this suit for damages after previously suing for cancellation of the lease as it amounts to dividing a cause of action in violation of LSA-C.C.P. Art. 425.
(3) A lessee who remains in possession of leased premises cannot recover for rental paid to the lessor during the period of the lessee's possession even though the lessor breached the lease contract.
*487 (4) The failure of the lessor to repair the roof and replace the manlift did not cause the damages alleged by plaintiffs.
(5) Plaintiffs failed to mitigate their damages, if any.
(6) Interest on an unliquidated claim based on quantum meruit can only be awarded from date of final judgment.
Plaintiffs-appellees' arguments on appeal may be summarized as follows:
(1) Plaintiffs are not barred by res judicata because the demand (damages) in the present suit is not the same as the demand (cancellation) in the previous suit.
(2) Plaintiffs are not barred by LSA-C.C.P. Art. 425 in that their cause of action for damages asserted in the present suit is separate and distinct from their cause of action for cancellation asserted in the previous suit.
(3) The failure of defendants to comply with their obligations under the lease is a failure of the cause or consideration for plaintiffs' obligation and agreement to pay the stipulated rent. Plaintiffs did not receive what they bargained for and as a result of the defendants' breach, plaintiffs have been damaged and have sustained a loss, and defendants have been unjustly enriched, in an amount equal to the difference between the amount of rent stipulated in the lease and paid by plaintiffs and the fair rental value of the premises during pendency of the suit for cancellation.
(4) Legal interest is due on a debt from the date the debt becomes due, which in this case is the date each payment of rental in excess of fair rental value was paid. This is not a suit based on quantum meruit.
Res Judicata
LSA-C.C. Art. 2286 provides:
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
The object of the first suit and the thing demanded was cancellation or dissolution of the contract. The object of the second suit and the thing demanded is damages. Thus, the object of the judgment and the thing demanded is not the same in each suit. Essential elements of res judicata as defined in LSA-C.C. Art. 2286 are absent.
Closely in point is Quarles v. Lewis, 226 La. 76, 75 So.2d 14 (1954). In that case plaintiff first filed suit for specific performance of a contract to sell real estate and judgment was rendered ordering specific performance. Plaintiff then filed suit against the same defendant to recover damages sustained by reason of defendant's breach of contract. Defendant's plea of res judicata was sustained by the district court and the court of appeal. The Supreme Court reversed, holding that res judicata does not apply when the demand is not the same as previously made, even though it might have been asserted in the original action.
Successive suits for specific performance of a contract and damages for breach of contract are closely analogous to successive suits for dissolution of a contract and damages for breach of contract, all being founded on LSA-C.C. Art. 1926.
The district court properly overruled defendants' peremptory exception of res judicata.
Splitting Cause of Action
LSA-C.C.P. Art. 425 provides:
An obligee cannot divide an obligation due him for the purpose of bringing separate actions on different portions thereof. If he brings an action to enforce only a portion of the obligation, and does *488 not amend his pleading to demand the enforcement of the full obligation, he shall lose his right to enforce the remaining portion.
This article of the Code of Civil Procedure is a codification of the previously existing rule against splitting causes of actiona rule designed to minimize litigation and to prevent harassment of defendants by a multiplicity of suits based upon the same claim. Under the rule, a plaintiff was considered as having waived all portions of the claim not asserted in the prior suit. The comment under LSA-C.C.P. Art. 425 notes that no change in the procedural law of Louisiana is intended.
Defendants' contention that plaintiffs lost their right to claim damages by not cumulating such an action with the action for dissolution of the contract is answered adversely in Quarles v. Lewis, 98 So.2d 301 (La.App.1st Cir. 1957). After the Supreme Court decision overruling the plea of res judicata and remanding the case for further proceedings, the Quarles case came back to the Court of Appeal which considered the issue of whether plaintiff had waived his right to claim damages by not asserting it in the original suit. The court held that plaintiff did not waive, by his earlier suit for specific performance, his entirely separate claim for damages. The first claim was terminated after the delayed performance of the contract and only then did the second claim for damages fully accrue. To compel to do and to compel to pay for not doing timely, rather than a single claim, are correlative and complementary claims.
In the instant case, as correctly argued by counsel for plaintiffs, their claim for damages, if any, did not fully accrue until the judgment canceling and dissolving the lease became final and the leased premises were abandoned. Whether the right to claim dissolution and the right to claim damages technically and strictly amount to separate causes of action, it is manifest that the claim for damages did not and could not fully accrue until the judicial dissolution of the lease contract. Plaintiffs' failure to assert the yet unaccrued claim for damages in the original suit for dissolution of the contract does not bar their claim for damages asserted in the present suit. The two suits do not amount to the dividing of a single obligation and bringing separate actions on different portions thereof. LSA-C.C.P. Art. 425 is not applicable.
On the Merits
Pertinent to a decision on the merits of plaintiffs' demand for damages are the following Civil Code Articles:
Art. 2693. The lessor is bound to deliver the thing in good condition, and free from any repairs. He ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary; except those which the tenant is bound to make, as hereafter directed.
Art. 2694. If the lessor do not make the necessary repairs in the manner required in the preceding article, the lessee may call on him to make them. If he refuse or neglect to make them, the lessee may himself cause them to be made, and deduct the price from the rent due, on proving that the repairs were indispensable, and that the price which he has paid was just and reasonable.
Art. 2695. The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
Art. 2668. The contract of lease or letting out (besides the rules in which it is *489 subject in common with other agreements, and which are explained under the title: Of Conventional Obligations) is governed by certain particular rules, which are the subject of the present title.
Art. 2729. The neglect of the lessor or lessee to fulfill his engagements, may also give cause for a dissolution of the lease, in the manner expressed concerning contracts in general, except that the judge can not order any delay of the dissolution.
Art. 1926. On the breach of any obligation to do, or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section.
Art. 2046. A resolutory condition is implied in all commutative contracts, to take effect, in case either of the parties do not comply with his engagements; in this case the contract is not dissolved of right; the party complaining of a breach of the contract may either sue for its dissolution with damages, or, if the circumstances of the case permit, demand a specific performance.
Art. 2047. In all cases the dissolution of a contract may be demanded by suit or by exception; and when the resolutory condition is an event, not depending on the will of either party, the contract is dissolved of right; but, in other cases, it must be sued for, and the party in default may, according to circumstances, have a further time allowed for the performance of the condition.
Art. 1934. Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:
1. When the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. By bad faith in this and the next rule, is not meant the mere breach of faith in not complying with the contract, but a designed breach of it from some motive of interest or ill will.
* * * * * *
In the prior suit for cancellation, the court held the lessor breached its obligation under LSA-C.C. Arts. 2692 and 2695 and its obligations under the lease, relating to maintenance of and vices and defects of the leased premises. It should be noted that Article 2695 provides for the recovery of damages, stipulating that "if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same." The court ordered cancellation or dissolution of the lease contract pursuant to the authority of LSA-C.C. Art. 2729 which provides that the neglect of the lessor or lessee to fulfill his engagements may give cause for a dissolution of the lease, in the manner expressed concerning contracts in general.
LSA-C.C. Art. 2668 provides that the contract of lease is governed by the particular rules of Title IX of the Civil Code, "besides the rules in which it is subject in common with other agreements, and which are explained under the title: Of Conventional Obligations." This Article, together with Article 2729, makes it clear that in addition to the particular rules governing leases, such contracts are subject to the general rules relating to conventional obligations, particularly in regard to dissolution for breach thereof.
LSA-C.C. Art. 1926 provides that upon breach of any obligation to do or not to do, the obligee is entitled to specific performance, *490 or dissolution, "and in all these cases damages may be given where they have accrued." LSA-C.C. Art. 2046 provides that a resolutory condition is implied in all cummulative contracts in the event either party does not comply with his engagements. In this case, the contract is not dissolved of right. The complaining party may sue for dissolution of the contract "with damages," or for specific performance. LSA-C.C. Art. 2047 requires that when the resolutory condition is an event not depending on the will of the parties, the contract is dissolved of right, but in other cases "it must be sued for."
The measure of damages for breach of contract is governed by LSA-C.C. Art. 1934. This article provides that the damages due the creditor for breach of contract "are the amount of the loss he has sustained, and the profit of which he has been deprived." Where there is no fraud or bad faith, and none is alleged or proved in the instant case, the debtor is "liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract."
The foregoing review of pertinent articles of the Civil Code leads to three conclusions applicable to the issues in this case:
(1) The breach of the contract by the lessor did not dissolve the contract of right. Dissolution had to be sued for and judicially declared. Consequently, the lease was dissolved as of the date the judgment decreeing cancellation became final, that is, in May, 1970. It was not dissolved as of the date of breach or as of the date of filing suit for cancellation. The lease remained in effect, with the lessee entitled to occupancy and obligated to pay rent, until its judicial dissolution.
(2) Because of the lessor's breach of the contract, the lessee is entitled not only to dissolution of the lease, but to such damages as may have accrued as a result or consequence of the breach.
(3) The measure of damages to which the lessee is entitled by reason of the lessor's breach of the lease contract is the amount of loss the lessee has sustained, and the profit of which he has been deprived, within the contemplation of the parties at the time of the contract.
A wide range of damages has been awarded by the courts in cases involving similar breaches by a lessor. See, for example, O'Rourke v. Fulton Bag & Cotton Mills, 133 La. 955, 63 So. 480 (1913) Knapp v. Guerin, 144 La. 754, 81 So. 302 (1919); Tidwell v. Meyer Bros., 160 La. 778, 107 So. 571 (1926). Plaintiffs do not, however, seek damages of the nature awarded in previous Louisiana cases, but limit their claim to recovery of the loss sustained by them as a result of defendants' breach measured by the difference in the amount of stipulated rent paid by them and the fair rental value of the leased premises during the pendency of the suit for cancellation. Plaintiffs contend that since the defects for which defendants were responsible rendered the premises unsuitable for the purposes for which the premises were leased, there was a failure of the cause or consideration for plaintiffs' obligation to pay rent and plaintiffs are responsible only for the fair rental value of the premises during their occupancy while the previous suit was pending.
As authority for employing such a measure of damages, plaintiffs cite four cases from other jurisdictions: Charles E. Burt, Inc. v. Seven Grand Corporation, 340 Mass. 124, 163 N.E.2d 4 (1959); Pines v. Perssion, 14 Wis.2d 590, 111 N.W.2d 409 (1961); Kline v. Burns, 111 N.H. 87, 276 A.2d 248 (1971); Berzito v. Gambino, 63 N.J. 460, 308 A.2d 17 (1973). No Louisiana authority is cited, and none exists.
The cases from common law jurisdictions cited by plaintiffs offer little or no *491 assistance in resolving the issues presented here under Louisiana law of leases and contracts generally. The Pines, Kline and Berzito cases all involved relatively short term leases of low rental residential housing. The courts of Wisconsin, New Hampshire and New Jersey, applying innovative reasoning under common law lease principles to meet modern-day urban sociological problems relative to residential housing, held in each case that the tenant was responsible only for the fair rental value of uninhabitable dwellings during their period of occupancy. The facts of those cases, the common law principles of law applied, and the underlying sociological reasons for the decisions are wholly dissimilar to the case before this court.
The Seven Grand case is more similar to the instant case on its facts. It involved a commercial lease and a failure of the lessor to provide electrical power, heat and elevator service as required by the lease. The lease was declared rescinded as of the date of filing suit for recission and damages. Damages were awarded for specific proven items of damage such as lost profits, cost to the lessee to obtain the needed services, and the like. The Massachusetts Supreme Court remanded the case to the trial court for determination of the period of the lessee's occupancy after the date of recission of the lease, holding that the lessor was entitled only to fair rental value during occupancy after cancellation. The holding lends little support to plaintiffs' position in the instant case in which plaintiffs seek to recover rent paid in excess of fair rental value for a period of occupancy prior to cancellation of the lease.
Even if there is common law authority for the proposition that a lessee owes only fair rental value during continued occupancy after a lessor's breach of the lease but prior to cancellation, which proposition is not supported to any extent by even the cited cases, there is no authority for the proposition in Louisiana. To the contrary, there is substantial jurisprudence holding that the lessee remains obligated to pay the contracted rental during occupancy after a breach of the lease by the lessor. In the event of a failure by the lessor to make needed repairs for which he is responsible after being called on to do so, the lessee may, under the provisions of LSA-C.C. Art. 2694, cause them to be made and deduct the reasonable price paid from the rent due. Alternatively, the lessee may sue to dissolve the lease, as was done in this instance. Some cases recognize that under certain circumstances the lessee may be justified in terminating the lease and surrendering possession of the premises. The lessee may not, however, remain in possession and claim a reduction in the stipulated rental, whether denominated as damages or otherwise.
In Degrey v. Fox, 205 So.2d 849 (La.App.4th Cir. 1968) the lessor failed to complete needed repairs which the lessor was obligated to make under the terms of the lease. The lessee continued to occupy the premises but thereafter tendered only partial payment of the stipulated rent, claiming a right to a just and proportionate reduction of the rent until the repairs were completed by the lessor. The lessor sued for eviction and recovery of the full past due rent. In denying the lessee's claim to a reduction of the rental beyond a term expressly provided for in the lease contract, the court cited LSA-C.C. Arts. 2693 and 2694 and held:
The jurisprudence interpreting these articles is clearly to the effect that a lessor's breach of his obligation to repair does not exonerate lessee from his obligation to pay the stipulated rental for his use and occupancy of the leased premises. (See Mulhaupt v. Enders, 38 La.Ann. 744; Pesant v. Heartt, 22 La.Ann. 292; Lewis v. Pepin, 33 La.Ann. 1417; Winn v. Spearing, 26 La.Ann. 384; Diggs v. Maury, 23 La.Ann. 59.) Defendant-lessee does not contend that he owes no rent for his use and occupancy of the premises. His only contention *492 is that the quoted clause of the lease gives him a right to reduce the stipulated rental to a "just and proportionate" amount for as long as the owner neglected to complete the repairs.
We are of the opinion, as was the District Judge, that the quoted provision of the lease does not give the lessee such right, the provision being for the primary benefit of the owner permitting him to avoid cancellation of the lease. When the owner exercised his right to repair the premises and then failed to complete the repairs the lessee had the option to complete the repairs himself within a reasonable time (See Leggio v. Manion, La.App., 172 So.2d 748) and deduct the cost thereof from the rent to become due, or else, to terminate the lease and surrender possession of the premises to the owner.
In Gamble v. New Orleans Housing Mart, Inc., 173 So.2d 219 (La.App.4th Cir. 1965), the lessee sued to cancel a lease because of an alleged breach by the lessor in arbitrarily refusing to consent to a sublease, and to recover all rent paid. The lessee remained in possession of the premises, depositing the monthly rental in the registry of the court. The lessor reconvened for the full amount of rent due under the lease. In awarding the lessor recovery of the rent due, the court held:
We cannot agree with the district court. A lessee cannot recover rent paid as damages for breach of contract of lease where he had the use of the premises during the period for which the rent was paid. Finnin v. Balter, 168 La. 527, 122 So. 716.
In Finnin v. Balter, 168 La. 527, 122 So. 716 (1929) a lease contract provided that at the beginning of the lease the lessor would make certain improvements and alterations. The lessee took possession but the lessor failed to comply with the contract, whereupon lessee sued to rescind the lease and to recover three months rent paid as damages, along with other damages. In denying recovery of the rent paid, the court held:
Plaintiff is not entitled to recover the rent paid, for the reason that for the period for which the rent was paid he had the use of the building.
In Baronne Building, Inc. v. Mahoney, 16 La.App. 84, 132 So. 795 (Orl.1931) the lessee resisted the lessor's suit for rent, claiming entitlement to diminution of the rent due to the breach of the lessor's contractual obligation to furnish heat in the leased building. The court found the lessee would have been warranted in vacating the premises, but not having done so, was liable for the rent. The court held:
The question seems to be well settled in this state that failure of the landlord to comply with his obligation with regard to such matters as heating, lighting, etc., does not justify the tenant in occupying the premises rent-free. He may follow either of two courses, abandon the premises, or, if the necessary repairs can be reasonably made, make them himself and deduct the cost from any rent due or to become due, but, in any event, he must pay rent for the period of actual occupancy.
Cameron v. Krantz, 299 So.2d 919 (La.App.3d Cir. 1974) was an eviction suit in which the lessee contended he had the right to discontinue payment of rent and to retain possession of the leased premises until the lessor complied with his obligations to properly equip the premises. In rejecting the lessee's defense, the court held:
Assuming for the purpose of this suit, but without making any determination of that issue, that Krantz failed to perform his obligations under the lease prior to December 1, 1972, when Cameron discontinued the payment of the monthly rentals, our conclusion is that Cameron nevertheless did not have the right to discontinue the rental payments due under *493 the contract and also to retain possession and use of the leased premises. Cameron's failure to pay the rentals, under the circumstances presented here, constituted sufficient grounds for a judgment evicting him from the leased premises.
In Friendly Finance, Inc. v. Cefalu Realty Investment, Inc., 303 So.2d 558 (La.App.1st Cir. 1974), the lessee sought to recover rent paid after the effective date of cancellation of a lease by judgment in a prior suit based on breach of the lease by the lessor. The lessor sought to retain the rent paid as reasonable on a quantum meruit basis. The court found that the lessee did not continue to occupy the premises after the effective date of the cancellation and allowed recovery of the rent paid after the premises were vacated. In passing on the issue, the court noted:
The law is clear that a lessee cannot recover rental paid while it has possession of the leased premises. See Finnin v. Balter, 168 La. 527, 122 So. 716, 717 (1929) and Gamble v. New Orleans Housing Mart, Inc., 173 So.2d 219, 220 (La.App.4th Cir. 1965).
While each of the cases discussed above may be distinguished from the instant case on its facts, they all stand as good authority for the principle that a lessee remains obligated for the contractual rent during continued occupancy of the leased premises prior to cancellation of the lease even though the lease has been breached by the lessor's failure to comply with his obligations in regard to the condition of the premises.
As a measure of damages, the difference in fair rental value and rent actually paid, under the evidence in this case, does not bear any reasonable relationship to any proven loss sustained by the lessee caused by the lessor's failure to replace the manlift or to repair the leaky roof. The difference between fair rental value and rent actually paid might, in an appropriate case, be an acceptable measure or guide to establishing a lessee's loss arising out of a lessor's breach of the lease contract. It cannot, however, be accepted as an arbitrary measure of damages.
The evidence in this case shows the parking garage was operated at a substantial loss during the period for which recovery is sought. The evidence also shows, however, that the garage was being operated at a loss prior to the time the manlift became inoperable and suit was filed for cancellation of the lease. The evidence reveals that the number of persons parking in downtown Shreveport declined substantially after the sublease was entered into because of oil companies moving away, opening of suburban shopping centers, and other factors entirely unrelated to lessor's breach of the lease. Although there was some brief testimony by the garage's manager relative to problems related to the lack of a manlift and to the leaking roof, the record does not support, and it is not urged by plaintiffs, that there is any causal relationship between the lessor's breach and lessees' operating loss. Plaintiffs' position is that their formula is justified as a measure of damages because it measures the difference in value of what plaintiffs bargained for and what they actually received. This standard does not comply with LSA-C.C. Art. 1934, which defines recoverable damages as the amount of the creditor's loss or loss of profits, within the contemplation of the parties at the time of entering into the contract.
Plaintiffs have not established any "loss" or "loss of profits", and an arbitrary assessment of damages on the basis of the difference between rent paid and fair rental value cannot be made.
Further illustrative of the lack of relationship between the amount claimed by plaintiffs and the lessor's breach is the manner of arriving at "fair rental value" by plaintiffs' experts. The opinions of *494 both an expert real estate appraiser and of an experienced parking lot operator as to fair rental value were based fundamentally on the amount of business actually done by the parking garage during the five-year period in question. The amount of business done, depending on economic factors in downtown Shreveport during that period, was totally unrelated, according to the evidence, to the lessor's failure to repair the manlift and roof.
Summarizing, it is the holding of this court that plaintiffs, having continued to occupy the leased premises during the pendency of the previous suit prior to the cancellation of the lease, remained obligated for the contracted rent. As lessees in possession, they are not entitled to a reduction of or return of a portion of the rent in excess of fair rental value, even though the lessors breached their obligations to repair. Although entitled to recover their damages caused by the lessors' breach, the lessees are not entitled to recover the difference between fair rental value and rent actually paid as an arbitrary measure of damages. The evidence does not establish a reasonable relationship between such a measure of damages and any loss sustained by the lessees as a result of the lessors' breach of contract. The award of damages made by the district court based solely on such measure of damages must be reversed and set aside. No other damages are sought by plaintiffs.
This disposition of the case makes it unnecessary to consider the other contentions of the parties outlined earlier in this opinion.
For the reasons assigned, the judgment of the district court is reversed and set aside and there is judgment in favor of defendants and against, plaintiffs rejecting plaintiffs' demands. All costs, including the cost of appeal, are assessed to the plaintiffs-appellees.
Reversed and rendered.