2004 WY 26

Sue A. MERRILL, Appellant (Defendant),

v.

Alvina JANSMA, Appellee (Plaintiff).

No. 02–205.

Supreme Court of Wyoming.

March 18, 2004.

Representing Appellant: Colin M. Simpson of Simpson, Kepler & Edwards, LLC, Cody, Wyoming.

Representing Appellee: Jeffrey J. Gonda and Michael C. Steel of Lonabaugh & Riggs, Sheridan, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Sue A. Merrill appeals from a summary judgment dismissing her claims for personal injury resulting from a fall on rental property belonging to Alvina Jansma. She claims the district court erred in ruling that, as a matter of law, Ms. Jansma owed no duty to Ms. Merrill under the Residential Rental Property Act, Wyo. Stat. Ann. § 1–21–1202 (LexisNexis 2001) and no genuine issue of material fact existed under the common law as set forth in *Restatement (Second) of Torts* § 326 (1965). We reverse and hold the Residential Rental Property Act imposes a duty on landlords to maintain leased premises in a fit and habitable condition. We further hold that this duty establishes the standard of care applicable generally to personal injuries occurring on leased premises—a standard of reasonable care under the circumstances. Finally, we hold that the statutory duty and the standard arising from it replace the common law rule of landlord immunity and its exceptions.

### ISSUES

[¶ 2] Ms. Merrill states the issues as follows:

I. The District Court erred when it held, as a matter of law, that the Residential Rental Property Act, Wyo. Stat. Ann. § 1–21–1201 (LexisNexis 2001), *et seq.,* imposed no duty on Appellee in favor of Appellant under the facts of this case.

II. Material questions of fact existed as to whether § 362, *Restatement 2d Torts* (1965) applied and imposed a duty on Appellee in favor of Appellant.

[¶ 3] Ms. Jansma restates the issues as follows:

I. Does the Residential Rental Property Act, W.S. § 1–21–1201, *et seq.,* reverse the Wyoming common law doctrine of landlord immunity by imposing a legal duty upon a landlord that subjects her to negligence liability in the event that her tenant's invitee suffers injury on the leased premises?

II. Did the district court correctly determine that there is no material fact in dispute that, if proven by Appellant, would bring this case under one of the recognized exceptions to the general rule of landlord immunity?

### FACTS

[¶ 4] The facts, viewed in the light most favorable to the party opposing the summary judgment motion, are that on February 19, 2000, Ms. Merrill injured her right shoulder when she fell as she was ascending the front steps leading to the porch and front door of the mobile home her daughter, Sherri Pritchard, rented from Ms. Jansma. The step became loose during the time Ms. Pritchard rented the home. Prior to the fall, Ms. Pritchard attempted to repair the step by securing it with nails. When that failed, she informed the manager of the property that the step was loose. The manager suggested Ms. Pritchard try using screws to secure the step. Ms. Pritchard told the manager she did not have a screw gun. The manager had one and said she would screw the step into place. Subsequently, and without Ms. Pritchard's knowledge, the manager attempted to repair the step. Apparently, that effort was unsuccessful and Ms. Merrill fell when the step separated from the porch as she stepped on it.

[¶ 5] Ms. Merrill filed a negligence claim against Ms. Jansma as the owner of the property alleging she knew or reasonably should have known the step was dangerous and failed to exercise reasonable care to alleviate the danger. She further alleged Ms. Jansma owed a duty of care to her as a visitor to the rental property. She sought damages for the injuries she sustained in the fall from the step, including medical expenses, lost earnings and damages for emotional distress and pain and suffering. Ms. Jansma answered the complaint and then filed a motion for summary judgment, claiming she owed no legal duty to Ms. Merrill. The district court granted Ms. Jansma's motion for summary judgment, holding that, as a matter of law, she had no legal duty to Ms. Merrill under either the Residential Rental Property Act or the common law as set forth in § 362 of the Restatement.

## STANDARD OF REVIEW

[¶ 6] In reviewing summary judgment orders, we have the same duty, review the same materials, and follow the same standards as the district court. *Hoblyn v. Johnson*, 2002 WY 152, ¶ 11, 55 P.3d 1219, ¶ 11 (Wyo.2002). The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. *Id.* A genuine issue of material fact exists when a disputed fact, if proven, would have the effect of establishing or refuting an essential element of an asserted cause of action or defense. *Board of County Commissioners of Teton County v. Crow*, 2003 WY 40, ¶ 17, 65 P.3d 720, ¶ 17 (Wyo.2003).

[¶ 7] We view the record from the standpoint most favorable to the party opposing the motion, giving to that party all favorable inferences that fairly may be drawn from the record. *Id.* We will uphold summary judgment on the basis of any proper legal theory appearing in the record. *Id.* We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling. *Goglio v. Star Valley Ranch Association*, 2002 WY 94, ¶ 12, 48 P.3d 1072, ¶ 12 (Wyo.2002). Summary judgment is not favored in negligence cases. *Roitz v. Kidman*, 913 P.2d 431, 432 (Wyo.1996). We, therefore, scrutinize orders granting summary judgment more carefully in such cases. *Id.*

## DISCUSSION

### 1. Residential Rental Property Act

[¶ 8] In its summary judgment order, the district court held Ms. Jansma owed no duty to Ms. Merrill under the Residential Rental Property Act, Wyo. Stat. Ann. § 1–21–1201, et seq. (LexisNexis 2001) because Ms. Merrill failed to give Ms. Jansma written notice of the loose step as required by the act. Ms. Merrill contends this holding is incorrect in two respects. First, she cites § 1–21–1202(a) of the act, which states: "[e]ach owner and his agent renting or leasing a residential rental unit shall maintain that unit in a safe and sanitary condition fit for human habitation." Ms. Merrill asserts that, by the enactment of this provision, the legislature abrogated the common law rule of landlord immunity and imposed a broad affirmative duty upon landlords and their agents to maintain rental properties in a reasonably safe condition. She claims Ms. Jansma breached this duty by failing to maintain, or have her manager maintain, the steps leading up to Ms. Pritchard's home. Ms. Merrill also contends the district court erred in holding that her failure to give written notice under § 1–21–1206 precludes her claim. She asserts the notice provision applies only when a landlord disputes a tenant's request for repair, which did not occur here.

[¶ 9] Citing the rule that legislative abrogation or modification of the common law will not be presumed absent explicit, unambiguous language demonstrating that intent, Ms. Jansma argues the Residential Rental Property Act does not abrogate the common law rule of landlord immunity. Ms. Jansma asserts the act does not explicitly repeal the common law and, when read as a whole, does not support the conclusion that the legislature intended to impose a general duty requiring a landlord to maintain rental premises, including steps, on a single-dwelling unit. Rather, she contends, it is clear the legislature intended only to set out minimum health and safety requirements—operational electricity, heating, plumbing and hot and cold water—and procedural mechanisms for enforcing them. In the event we find the legislature intended to abrogate the common law rule of immunity, Ms. Jansma argues alternatively that Ms. Pritchard did not comply with the notice requirements of the Residential Rental Property Act and Ms. Merrill's claim is precluded for that reason. We consider first the question of whether the act imposes a duty on landlords supplanting the common law rule of immunity. In addressing that issue, we find it helpful to review the development of landlord-tenant law from a historical perspective.

### a. Historical Development

[¶ 10] For centuries, landlord immunity was the rule in landlord-tenant law.

Since 16th century feudal England a lease has been considered a conveyance of an interest in land, carrying with it the doctrine of *caveat emptor*.

The lessor impliedly covenanted that he had the legal right to transfer possession and that he would leave the tenant in "quiet enjoyment of the leasehold," but he did *not* impliedly warrant as to the habitability or fitness of the premises for any particular use.

As a lessee of real property a 16th century tenant in England was expected to inspect the premises prior to the "sale," and in the absence of express covenants to the contrary, he took possession with whatever defects existed at the time of the lease. Nor did the landlord have an implied responsibility to maintain the leasehold in a reasonable state of repair during the term of the lease. . . .

It was in this setting that the principle of tort immunity for the landlord developed . . . as part and parcel of the concept that a lease is primarily a conveyance of real estate. The landlord was not liable to the tenant or third persons for personal injury or personal property damage caused by a defect present at the transfer of possession or by defects arising during the term of the leasehold.

*Old Town Development Company v. Langford*, 349 N.E.2d 744, 753–54 (Ind.App.1976) (footnotes omitted).

[¶ 11] With the transition from a mostly rural to a more urban society, however, the rule of landlord immunity gave way slightly to some judicially recognized exceptions.

During and following the Industrial Revolution, the population migration from rural to urban areas accentuated the importance of the structural improvements on the premises, and a corresponding decrease in the significance of the land itself. Leases often developed into complex transactions. The typical lease began to look more like a contract than a conveyance of real estate, often containing numerous express covenants alien to common law transfers of nonfreehold estates.

Accompanying this migration was an ever-increasing distaste for the continued application of *caveat emptor*, or *caveat lessee*, to urban leases of both commercial and residential property. Modern and more complex buildings brought added maintenance costs. At the same time tenants were less able to cope with the machinery and sophisticated systems in dwellings and commercial structures, which they had neither the expertise nor the funds to repair. But *caveat* lessee did not change, and remained firmly entrenched in both English and American common law protecting the lessor from liability for personal injury or personal property damage arising out of defective conditions on the leased premises.

While the cloak of immunity remained draped over the landlord as social and economic conditions changed, certain judicial exceptions were gradually, and grudgingly, carved-out "when such action could be harmonized with the rules governing the liability of a vendor of real property, or when the characterization of a lease as a conveyance was so contrary to social and economic realities that justice required the creation of an exception to the general rule." Love, *Landlord's Liability for Defective Premises: Caveat Lessee, Negligence or Strict Liability?*, 1975 Wis.L.Rev. 19, 50 (1975).

*Id.* at 754–55. Five exceptions to the rule of landlord immunity emerged.

A landlord could be held liable in tort for (1) defects in premises leased for admission of the public; (2) a breach of a covenant to repair; (3) negligent repairs; (4) defects in "common areas" under the landlord's control; and more recently (5) defects constituting a violation of a provision of the applicable building or housing code. *Id.*[1]

[¶ 12] Despite, or perhaps in part because of the exceptions, there was by the 1960s

---

**1.** In Wyoming, we have not addressed the fifth exception referenced in *Old Town*. As discussed later in this opinion, we have recognized the other four exceptions plus an exception for hidden or latently dangerous conditions known to

increasing "discontent with the appearance of unfairness in the landlord's general immunity from tort liability, and with the artificiality and increasing complexity of the various exceptions to this seemingly archaic rule of nonliability." W.L. Prosser & W.P. Keeton, Prosser & Keeton on Torts, 446 (5th ed.1984). As a result, some courts began to re-examine landlord tenant law.[2] One of the first of these was the Wisconsin Supreme Court, which in *Pines v. Perssion*, 14 Wis.2d 590, 111 N.W.2d 409 (1961), adopted a rule that residential leases between landlord and tenant carried with them an implied warranty of habitability and fitness—that is, a promise that the premises would be fit for human habitation. In reaching this result, the court said:

[T]he frame of reference in which the old common-law rule operated has changed.

Legislation and administrative rules, such as the safeplace statute, building codes, and health regulations, all impose certain duties on a property owner with respect to the condition of his premises. Thus, the legislature has made a policy judgment—that it is socially (and politically) desirable to impose these duties on a property owner—which has rendered the old common-law rule obsolete.

*Id.* at 595, 111 N.W.2d 409. *Pines* was followed by *Lemle v. Breeden*, 51 Haw. 426, 462 P.2d 470 (1969) and *Javins v. First National Realty Corporation*, 428 F.2d 1071 (D.C.Cir. 1970). The latter decision is frequently cited as the first all-out assault on traditional concepts of landlord-tenant law. *Old Town*, 349 N.E.2d at 756; Olin L. Browder, *The Taming of a Duty—The Tort Liability of Landlords*, 81 Michigan Law Review 99, 109 (1982). Like the court in *Old Town*, the courts in *Lemle* and *Javins* recognized that

an implied warranty of habitability applied to rental property. Since then a number of other courts have followed the lead of *Pines* and its progeny.[3]

[¶ 13] In addition to the courts that rejected the common law in favor of recognition of an implied warranty of habitability, other courts cast aside landlord immunity on the basis of general negligence principles. In *Sargent v. Ross*, 113 N.H. 388, 308 A.2d 528, 530 (1973), the court said:

General principles of tort law ordinarily impose liability upon persons for injuries caused by their failure to exercise reasonable care under all the circumstances. A person is generally negligent for exposing another to an unreasonable risk of harm which foreseeably results in an injury. But, except in certain instances, landlords are immune from these simple rules of reasonable conduct which govern other persons in their daily activities. This "quasisovereignty of the landowner" (2 F. Harper and F. James, Law of Torts 1495 (1956)) finds its source in agrarian England of the dark ages. Due to the untoward favoritism of the law for landlords, it has been justly stated that "the law in this area is a scandal." Quinn and Phillips, *The Law of Landlord Tenant: A Critical Evaluation of the Past with Guidelines for the Future*, 38 Ford L.Rev. 225 (1969). "For decades the courts persistently refused to pierce the hardened wall that preserved the landlord-tenant relationship in its agrarian state." Note, 59 Geo. L.J. 1153, 1163 (1971). But courts and legislatures alike are beginning to reevaluate the rigid rules of landlord-tenant law in light of current needs and principles of law from related areas. "Justifiable dissatisfaction

---

the landlord and unknown to the tenant. *Ortega v. Flaim*, 902 P.2d 199, 202 (1995).

**2.** Actually, at least one state rejected the common law rule much earlier. In 1895, the Georgia legislature enacted a statute imposing a duty of reasonable care on landlords and providing a remedy in the form of damages for injuries resulting from a landlord's failure to keep the premises in repair. O.C.G.A. § 44-7-14.

**3.** Other courts which have recognized an implied warranty of habitability in the context of rental

property include: *Marini v. Ireland*, 56 N.J. 130, 265 A.2d 526 (1970); *Kline v. Burns* 111 N.H. 87, 276 A.2d 248 (1971); *Jack Spring, Inc. v. Little*, 50 Ill.2d 351, 280 N.E.2d 208 (1972); *Mease v. Fox*, 200 N.W.2d 791 (Iowa 1972); *Boston Housing Authority v. Hemingway*, 363 Mass. 184, 293 N.E.2d 831 (1973); *Green v. Superior Court of San Francisco*, 10 Cal.3d 616, 111 Cal. Rptr. 704, 517 P.2d 1168 (1974); *Steele v. Latimer*, 214 Kan. 329, 521 P.2d 304 (1974); *Detling v. Edelbrock*, 671 S.W.2d 265 (Mo.1984).

with the rule" of landlord tort immunity (2 F. Harper and F. James, *supra* at 1510) compels its reevaluation....

On this basis, the court discarded the common law rule and held:

> [h]enceforth, landlords as other persons must exercise reasonable care not to subject others to an unreasonable risk of harm. A landlord must act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk. We think this basic principle of responsibility for landlords as for others "best expresses the principles of justice and reasonableness upon which our law of torts is founded." The questions of control, hidden defects and common or public use, which formerly had to be established as a prerequisite to even considering the negligence of a landlord, will now be relevant only inasmuch as they bear on the basic tort issues such as the foreseeability and unreasonableness of the particular risk of harm.

*Id.* at 534 (some citations omitted). Citing the New Hampshire court's decision in *Sargent*, the Nevada Supreme Court likewise removed the landlord's cloak of immunity in *Turpel v. Sayles*, 101 Nev. 35, 692 P.2d 1290, 1293 (1985), holding:

> In accord with those courts which have discerned no sound policy reason in the modern social context for retaining the ancient exception for landlords or property owners from the general application of the basic principles of tort law, we find no basis for excusing the landlord in this case from the requirement that she defend the allegation that she has, through her negligence, been the cause of foreseeable injuries to the plaintiff for which she should assume liability.

[¶ 14] As mentioned in *Sargent*, the reevaluation of landlord-tenant law has not been confined to the judiciary. In the past thirty years, legislatures in nearly every state have enacted statutes imposing new duties on landlords. The Uniform Residential Landlord and Tenant Act (URLTA) likely played a role in this development and served as a model for similar legislation, with varying degrees of amendment, in many states. 7B Uniform Laws Annotated (West Group 2000), Uniform Residential Landlord and Tenant Act, 527 (1972); Browder, *supra*, at 113. Although the URLTA differs in many respects from Wyoming's Residential Rental Property Act, both acts contain provisions requiring landlords to maintain the premises in a fit, safe and habitable condition. Both acts are also illustrative of the overwhelming movement nationwide away from landlord immunity and toward landlord responsibility for known dangers and those which ought to be known with the exercise of reasonable care. For that reason, we briefly discuss the URLTA.

[¶ 15] The purposes of the URLTA as stated in § 1.102 are generally to modernize the law and the rights and obligations of landlords and tenants, encourage both lessor and lessee to maintain rental premises, and make uniform the laws among those states that adopt it. Uniform Laws Annotated, *supra*, at 534. Among other things, the URLTA provides:

> § 2.104. [Landlord to Maintain Premises].
>
> (a) A landlord shall
>
> \* \* \*
>
> (2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;
>
> \* \* \*
>
> (4) maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, airconditioning, and other facilities and appliances ... supplied or required to be supplied by him[.]
>
> \* \* \*

*Id.* at 566. Section 4.101(a) of the URLTA authorizes the tenant to provide written notice to a landlord who is not in noncompliance with the preceding section that the lease will terminate if the condition is not corrected. *Id.* at 609. Section 4.101(b) allows the tenant to recover actual damages for the landlord's

noncompliance in addition to the remedies available under § 4.101(a). Section 1.105 also provides for the recovery of appropriate damages by the aggrieved party and the right to bring an action to enforce the rights and obligations declared by the act. *Id.* at 537. As of 2001, fifteen states had adopted the URLTA in whole or in part.[4]

[¶ 16] Altogether, over forty states have discarded the common law rule of landlord immunity and recognize a duty in some form, either through legislation, judicial declaration, or both.[5] Among the states with legislation addressing the landlord-tenant relationship, the statutory language varies considerably, with some following the example of the URLTA quite closely and others adopting their own version of landlord tenant statutory law. Just as the statutory language varies, the approaches taken by the courts differ in deciding whether the statute creates a duty and, if so, what the legal basis for the duty is and what remedies are available for breach of the duty. As noted, although there is considerable variation from state to state in the statutory language employed and judicial interpretation of that language, nearly every court is in agreement that landlords in the modern era have duties they did not have at common law.

[¶ 17] In *Thompson v. Crownover*, 259 Ga. 126, 381 S.E.2d 283, 284–85 (1989), for example, after noting the Georgia legislature's early rejection of the common law in favor of a duty of reasonable care, the court said:

> The public policy of this state supports the position advanced by The Restatement of Law 2d, Property, § 17.6:
>
>> A landlord should be subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenants by a dangerous condition ex-

isting before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:

>> (1) an implied warranty of habitability; or
>>
>> (2) a duty created by statute or administrative regulation.

In *Young v. Garwacki*, 380 Mass. 162, 402 N.E.2d 1045, 1049 (1980), the Massachusetts Supreme Judicial Court likewise was persuaded the common law rule had outlived its usefulness:

> Today, we do away with the ancient law that bars a tenant's guest from recovering compensation from a landlord for injuries caused by negligent maintenance of areas rented to the tenant. Like the other rules based on status, this rule has prevented a whole class of people from raising the overriding issue: whether the landlord acted reasonably under the circumstances. The practical result of this archaic rule has been to discourage repairs of rented premises. In cases like the one before us, a landlord with knowledge of a defect has less incentive to repair it. And the tenant, who often has a short-term lease, limited funds, and limited experience dealing with such defects, will not be inclined to pay for expensive work on a place he will soon be leaving. Thus, the defect may go unrepaired until an unsuspecting plaintiff finds herself with a lawsuit that care could have prevented.

The Massachusetts court held a landlord is required to exercise reasonable care to correct unsafe conditions of which he has notice and if he fails to make the repairs, the tenant or any person rightfully on the premises may bring a tort action against him for any injuries sustained. The court found this result

---

**4.** Alaska, Arizona, Florida, Hawaii, Kansas, Kentucky, Montana, Nebraska, New Mexico, Oregon, Rhode Island, South Carolina, Tennessee and Virginia. Uniform Laws Annotated, 2003 Supp., at 78.

**5.** The following states have recognized a duty in some form by legislation, judicial declaration, or both: Alaska, Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wisconsin.

to be consistent with the state statute governing landlord-tenant relations.[6]

[¶ 18] Similarly, in *Newton v. Magill*, 872 P.2d 1213 (Alaska 1994), the Alaska Supreme Court held a landlord has a duty of reasonable care in light of all the circumstances. The court stated:

We now further expand the landlord's duty of care in aligning Alaska with the jurisdictions following *Sargent*, and thus reject the traditional rule of landlord immunity.... We do this because it would be inconsistent with a landlord's continuing duty to repair premises imposed under the URLTA to exempt from tort liability a landlord who fails in this duty. The legislature by adopting the URLTA has accepted the policy reasons on which the warranty of habitability is based. These are the need for safe and adequate housing, recognition of the inability of many tenants to make repairs, and of their financial disincentives for doing so, since the value of permanent repairs will not by fully realized by a short-term occupant. The traditional rule of landlord tort immunity cannot be squared with these policies.

*Id.* at 1217. The court further stated:

Our rejection of the general rule of landlord immunity does not make landlords liable as insurers. Their duty is to use reasonable care to discover and remedy conditions which present an unreasonable risk of harm under the circumstances. Nor does our ruling mean that questions as to whether a dangerous condition existed in an area occupied solely by the tenant or in a common area, or whether the condition was apparent or hidden, are irrelevant. These are circumstances which must be accounted for in customary negligence analysis. They may pertain to the reasonableness of the landlord's or the tenant's conduct and to the foreseeability and magnitude of the risk. In particular, a landlord ordinarily gives up the right to enter premises under the exclusive control of the tenant without the tenant's permission. The landlord's ability to inspect or repair tenant areas is therefore limited. In such cases, "a landlord should not be liable in negligence unless he knew or reasonably should have know of the defect and had a reasonable opportunity to repair it." [*Garwacki*, supra.]

*Id.* at 1218.

[¶ 19] In accord with these cases, the court in *New Haverford Partnership v. Stroot*, 772 A.2d 792 (Del.2001) held:

[T]he Landlord Tenant Code imposes a duty on landlords to maintain the leased premises in a safe, sanitary condition and that an injured tenant may recover for personal injuries sustained as a result of landlord's negligent failure to do so.

In reaching this result, the court said:

[T]here is nothing to suggest that, in undertaking to regulate landlord/tenant relations, the General Assembly also intended to eliminate a tenant's ability to bring tort claims against a landlord. Our courts have long recognized that such claims remain unaffected by the Landlord Tenant Code.

*Id.* at 798. Like the courts in Georgia, Massachusetts, Alaska and Delaware, courts in the following states have applied negligence principles to landlord tenant relations on the basis of either legislative or judicial pronouncement: *Cummings v. Prater*, 95 Ariz. 20, 386 P.2d 27, 31 (1963); *Stephens v.*

---

6. Massachusetts General Law Chapter 186 § 19 provides:

A landlord or lessor of any real estate except an owner-occupied two- or three-family dwelling shall, within a reasonable time following receipt of a written notice from a tenant forwarded by registered or certified mail of an unsafe condition, not caused by the tenant, his invitee, or any one occupying through or under the tenant, exercise reasonable care to correct the unsafe condition described in said notice except that such notice need not be given for unsafe conditions in that portion of the premises not under control of the tenant. The tenant or any person rightfully on said premises injured as a result of the failure to correct said unsafe condition within a reasonable time shall have a right of action in tort against the landlord or lessor for damages. Any waiver of this provision in any lease or other rental agreement shall be void and unenforceable. The notice requirement of this section shall be satisfied by a notice from a board of health or other code enforcement agency to a landlord or lessor of residential premises not exempted by the provisions of this section of a violation of the state sanitary code or other applicable by-laws, ordinances, rules or regulations.

*Stearns,* 106 Idaho 249, 678 P.2d 41 (1984); *Brichacek v. Hiskey,* 401 N.W.2d 44, 47 (Iowa 1987); *Jackson v. Wood,* 11 Kan. App.2d 478, 726 P.2d 796 (1986); *Lenz v. Ridgewood Associates,* 55 N.C.App. 115, 284 S.E.2d 702 (1981); *Shump v. First Continental–Robinwood Associates,* 71 Ohio St.3d 414, 644 N.E.2d 291 (1994); *Errico v. LaMountain,* 713 A.2d 791 (R.I.1998); *Pryor v. Northwest Apartments,* 321 S.C. 524, 469 S.E.2d 630 (Ct.App.1996); *Hall v. Warren,* 632 P.2d 848 (Utah 1981); *Favreau v. Miller,* 156 Vt. 222, 591 A.2d 68 (1991); *Marple v. Papermill Park Corp.,* 30 Va. Cir. 154 (1993); *Antwaun v. Heritage Mutual Insurance Co.,* 228 Wis.2d 44, 596 N.W.2d 456 (1999).

[¶ 20] Even in states sometimes cited as having neither a statute nor court decision imposing liability on landlords,[7] the law has evolved away from landlord immunity. In Colorado, for example, where there is no legislation similar to the URLTA or Wyoming's Residential Rental Property Act, the courts have allowed recovery by injured persons for a landlord's failure to use reasonable care on the basis of the landowner liability statutes. C.R.S. § 13–21–115 (1993 Cum. Supp.); *Maes v. Lakeview Associates,* 892 P.2d 375 (Colo.App.1994).

[¶ 21] In contrast to the forty-plus states that have done away with landlord immunity, a few states have retained the common law except as explicitly provided in their particular landlord-tenant act. Nebraska, for example, enacted the URLTA but has since substantially modified it, including adding a provision that states: "The obligations imposed by this section are not intended to change existing tort law in the state." Neb. Rev.Stat. § 76–1419 (1974). The Nebraska Supreme Court has interpreted this provision to mean that the act does not change the common law, thus a landlord owes no duty to a tenant to repair leased premises absent a contractual provision to that effect or retention of control of the area where an injury occurs. *Tighe v. Cedar Lawn, Inc.,* 11 Neb.App. 250, 649 N.W.2d 520 (2002). It bears repeating, however, that Nebraska is one of only a very few states that adheres strictly to the common law "no duty" rule.

[¶ 22] Unlike Nebraska, other states that continue to apply the common law allow personal injury claims against a landlord on the basis of various legal theories. In Ohio, for example, despite the courts' continued adherence to the common-law rule, a landlord may be liable in tort for failing to maintain leased premises in a fit and habitable condition as required under Ohio's Landlords and Tenants Act. Ohio Rev.Code Ann. 5321.04 (1974); *Shump,* 644 N.E.2d at 296. The Ohio statute is viewed as an exception to a landlord's common-law immunity and as expanding the duties a landlord owes to those using rental property. *Id.*

[¶ 23] Along similar lines, the Oregon Supreme Court has held that the common law exists alongside the Oregon Residential Landlord and Tenant Act (ORLTA). *Davis v. Campbell,* 327 Or. 584, 965 P.2d 1017,1021 (1998). Thus, a tenant may bring a statutory claim under the ORLTA, a common-law negligence claim, or both. *Id.* With respect to the statutory claim, the court held the fact that the legislature did not incorporate elements of common-law negligence into the statute indicated its intent that a tenants' remedies under the act not be conditioned upon proof of such elements (thus, the court would not read into the act a requirement that the landlord have actual or constructive knowledge of an unsafe condition). *Id.* at 1019. Of further interest in terms of the issue before us, the Oregon Supreme Court has broadened the standard applicable to common-law negligence claims by rejecting previously adopted principles of obvious danger and actual or constructive knowledge in favor of more general comparative negligence principles. *Coulter Property Management, Inc. v. James,* 328 Or. 164, 970 P.2d 209 (1998). Citing the rule that the court would "reconsider a court-created rule or doctrine if 'surrounding statutory law or regulations have altered some essential legal element assumed in the earlier

---

7. Browder, *supra,* cites the following states: Alabama, Arkansas, Colorado, Indiana, Mississippi, South Carolina and Utah. Our research reveals that of these states, at least four allow recovery either by statute or judicial decision by individuals injured as a result of a landlord's failure to maintain rental premises—Colorado, Indiana, South Carolina and Utah.

case,'" the court held that with the adoption of comparative negligence the previously applied principles of obvious danger and actual or constructive knowledge contained in *Restatement, supra,* no longer accurately stated the common law of Oregon, thus altering an essential legal element assumed at the time the Restatement was adopted and warranting reconsideration of the common law rule.

[¶ 24] The Washington courts also continue to recognize common law principles governing personal injury claims arising out of the landlord-tenant relationship while simultaneously allowing claims for personal injuries by tenants based upon the Washington Residential Landlord–Tenant Act. *Tucker v. Hayford,* 118 Wash.App. 246, 75 P.3d 980 (2003). In reaching this result, the court has emphasized the provision of the Washington act taken from the URLTA authorizing the tenant to bring an action in an appropriate court for any remedy provided under the act or *otherwise provided by law. Id.* at 985.

[¶ 25] As this discussion illustrates, landlord-tenant law has evolved considerably from the days when the common law rule was established. Today, the vast majority of states recognize that a landlord has a duty to maintain rental property in a safe, habitable condition. With this overview in mind, we turn to a discussion of the law in Wyoming.

### b. The law in Wyoming

[¶ 26] Despite the overwhelming movement in other states to replace the rule of landlord immunity, Wyoming up to now has continued to apply the common law rule— absent a contractual provision to repair, a landlord generally owes no duty to a tenant or a tenant's guests for dangerous or defective conditions of the premises. *Hefferin v. Scott Realty Co.,* 71 Wyo. 114, 254 P.2d 194, 197 (1953). The only exceptions we have recognized to this general rule are where:

1. Hidden or latently dangerous conditions known to the landlord and unknown to the tenant cause an injury.
2. The premises are leased for public use and a member of the public is injured.
3. An injury occurs on a part of the premises retained under the control of the landlord but open to the tenant's use.
4. The landlord contracts to repair the premises.
5. The landlord negligently makes repairs.

*Ortega v. Flaim,* 902 P.2d 199, 202 (Wyo. 1995). In all but the five limited circumstances listed above, we have held to the common law rule that a landlord owes no duty to a tenant and have declined on several occasions to join the majority of states by judicially adopting landlord liability. *Id., Pavuk v. Rogers,* 2001 WY 75, 30 P.3d 19 (Wyo. 2001). Such a change in the common law, we have said, is best left to the legislature. *Id.* Most notably, in *Ortega,* we said:

In order for social guest Ortega to succeed in imposing landlord liability in this case, Wyoming's adherence to the common law rule must be abandoned....

Other states have construed statutes, contracts, or an implied warranty of habitability as imposing tort liability upon landlords. Since the 1970s, this legal trend has resulted in the majority of states abrogating the common law rule of landlord nonliability under various legal theories.

Presently, Wyoming has no legal basis for landlord tort liability as it has not enacted legislation on this issue, has not judicially recognized an implied warranty of habitability for rental premises and has not judicially altered the common law rule....

This court has modified or abandoned the common law on the issues of interspousal tort immunity, parental tort immunity, recovery for loss of spousal and parental consortium, negligent infliction of emotional distress, off-premises liability of a lessee, and classifications of tort plaintiffs in landowner liability cases.

Where this court has considered whether a duty should be imposed based on a particular relationship, numerous factors have been balanced to aid in determining whether a duty should be imposed. Social guest Ortega does not analyze these factors or provide a record for our analysis, but offers only the decision of *Sargent [v.*

*Ross,* 113 N.H. 388, 308 A.2d 528 (1973) ] as argument that modern trends demand abrogation of the common law in this instance. We believe such a change cannot be based solely upon a trend, but rather must be based upon relevant data and analysis which supports the legal, social and/or economic theories behind abrogating the common law.

Although most states have judicially recognized some type of landlord liability without relevant data, this recognition appears to have been driven by a desire to further the social policy of improving living conditions. In our opinion this is a matter for the legislature, and we decline to abrogate the common law in this instance without a proper record and insightful analysis of whether conditions in Wyoming warrant a change regarding residential leases.

*Ortega,* 902 P.2d at 202–04 (some citations omitted).

[¶ 27] Presumably with *Ortega* in mind, the legislature in short order took up the matter of landlord-tenant law. Just over a year after the decision, during the 1997 legislative session, a bill addressing landlord-tenant relations was introduced and assigned to committee where it was defeated without reaching the floor of either chamber. Two years later, during the 1999 legislative session, it was modified, reintroduced, amended, and passed into law as the Wyoming Residential Rental Property Act, § 1–21–1201, et seq. The provisions of the act pertinent to this appeal are quoted below. Those set out in bold and italicized are central to the issues before us.

§ 1–21–1202. Duties of owners and renters; generally

**(a) *Each owner and his agent renting or leasing a residential rental unit shall maintain that unit in a safe and sanitary condition fit for human habitation. Each residential rental unit shall have operational electrical, heating and plumbing, with hot and cold running water unless otherwise agreed upon in writing by both parties.*** Provided, however, this section shall not prevent the rental of seasonal rental units such as sum-

mer cabins which are not intended to have such amenities.

(b) Each renter shall cooperate in maintaining his residential rental unit in accordance with this article.

**(c) *This article does not apply to breakage, malfunctions or other conditions which do not materially affect the physical health or safety of the ordinary renter.***

(d) Any duty or obligation in this article may be assigned to a different party or modified by explicit written agreement signed by the parties.

§ 1–21–1203. *Owner's duties; notice by renter of noncompliance; duty to correct; exceptions; termination of rental agreement; liability limited*

**(a) *To protect the physical health and safety of the renter, each owner shall:***

**(i) *Not rent the residential rental unit unless it is reasonably safe, sanitary and fit for human occupancy;***

(ii) Maintain common areas of the residential rental unit in a sanitary and reasonably safe condition;

**(iii) *Maintain electrical systems, plumbing, heating and hot and cold water; and***

(iv) Maintain other appliances and facilities as specifically contracted in the rental agreement.

**(b) *If the renter is current on all payments required by the rental agreement and has reasonable cause supported by evidence to believe the residential rental unit does not comply with the standards for health and safety required under this article, the renter shall advise the owner in writing of the condition and specify the remedial action the renter requests be taken by the owner.*** Within a reasonable time after receipt of this notice, ***the owner shall either commence action to correct the condition of the residential rental unit or notify the renter in writing that the owner disputes the renter's claim.*** The notices required by this subsection shall be served by certified mail or in the manner specified by W.S. 1–21–1003.

(c) The owner shall not be required to correct or remedy any condition caused by the renter, the renter's family or the renter's guests or invitees by inappropriate use or misuse of the property during the rental term or any extension of it.

(d) *The owner may refuse to correct the condition of the residential rental unit and terminate the rental agreement if the costs of repairs exceeds an amount which would be reasonable in light of the rent charged, the nature of the rental property or rental agreement. If the owner refuses to correct the condition and intends to terminate the rental agreement, he shall notify the renter in writing* within a reasonable time after receipt of the notice of noncompliance and shall provide the renter with sufficient time to find substitute housing, which shall be no less than ten (10) days nor more than twenty (20) days from the date of the notice. If the rental agreement is terminated, the rent paid shall be prorated to the date the renter vacates the unit and any balance shall be refunded to the renter along with any deposit due in accordance with W.S. 1-21-1208.

(e) *The owner is not liable under this article for claims for mental suffering or anguish.*

§ 1-21-1204. Renter's duties.

(a) Each renter shall:

(i) Maintain the residential rental unit occupied in a clean and safe condition and not unreasonably burden any common area;

(ii) Dispose of all garbage and other waste in a clean and safe manner;

(iii) Maintain all plumbing fixtures in a condition as sanitary as the fixtures permit;

(iv) Use all electrical, plumbing, sanitary, heating and other facilities and appliances in a reasonable manner;

(v) Occupy the residential rental unit in the manner for which it was designed and shall not increase the number of occupants above that specified in the rental agreement without written permission of the owner;

(vi) Be current on all payments required by the rental agreement;

(vii) Comply with all lawful requirement of the rental agreement between the owner and the renter; and

(viii) Remove all property and garbage either owned or placed within the residential rental unit by the renter or his guests prior to termination of the rental agreement and clean the rental unit to the condition at the beginning of the rental agreement.

§ 1-21-1205. Prohibited acts by renter.

(a) No renter shall:

(i) Intentionally or negligently destroy, deface, damage, impair or remove any part of the residential rental unit or knowingly permit any person to do so;

(ii) Interfere with another person's peaceful enjoyment of the residential property; or

(iii) Unreasonably deny access to, refuse entry to or withhold consent to enter the residential rental unit to the owner, agent or manager for the purpose of making repairs to or inspecting the unit, and showing the unit for rent or sale.

§ 1-21-1206. *Renter's remedies; notice to owner or agent; judicial remedy;* rights under termination of rental agreement

(a) *The remedies set forth in this section are available to a renter in compliance with all provisions of W.S. 1-21-1204 and 1-21-1205 when the rental agreement has not been lawfully terminated pursuant to W.S. 1-21-1203(d).*

(b) *If a reasonable time has elapsed after the renter has served written notice on the owner under W.S. 1-21-1203 and the owner has failed to respond or to correct the condition described in the notice, the renter may cause a "notice to repair or correct condition" to be prepared and served on the owner* by certified mail or in the manner specified by W.S. 1-21-1003. This notice shall:

(i) Recite the previous notice served under W.S. 1-21-1203(b);

(ii) State the number of days that have elapsed since the notice was served and that under the circumstances the period of time constitutes the reasonable time allowed under W.S. 1–21–1203(b);

(iii) State the conditions included in the previous notice which have not been corrected;

(iv) Demand that the uncorrected conditions be corrected; and

(v) State that if the owner fails to commence reasonable corrective action within three (3) days he will seek redress in the courts.

*(c) If the owner has not corrected or used due diligence to correct the conditions following notice under this section, or if the owner has notified the renter that the claim is disputed, the renter may commence a civil action in county or justice of the peace court.* The court shall endorse on the summons the number of days within which the owner is required to appear and defend the action, which shall not be less than three (3) nor more than twenty (20) days from the date of service. *Upon a showing of an unreasonable refusal to correct or the failure to use due diligence to correct a condition described in this*

*article, the renter may be awarded costs, damages and affirmative relief as determined by the court. Damages awarded to the renter may include rent improperly retained or collected. Affirmative relief may include a declaration terminating the rental agreement, or an order directing the owner to make reasonable repairs.*

(d) If the court terminates the rental agreement pursuant to subsection (c) of this section, the renter is entitled to receive a refund of the balance of the rent and the deposit on the rental unit within thirty (30) days of the date the agreement is ordered terminated. The renter shall be required to vacate the rental unit no sooner than ten (10) days nor later than twenty (20) days after termination of the rental agreement by a court.

Sections 1–21–1207 through 1211 of the act address matters arising after termination of a rental agreement, such as the disposition of any deposit, prepaid rent, or personal property left behind by the renter, damage to the premises, refusal to vacate and owner's remedies, and are not relevant to the issues presented for our review. Having considered the language of our statute, as well as the law in other states, we turn to the question before us—the effect, if any, of Wyoming's landlord-tenant statute on the common law rule of landlord immunity.

**c. The effect of §§ 1–21–1201 through 1–21–1211 on the common law**

[¶ 28] In considering the pertinent provisions, we are bound by well-established rules for interpreting and construing statutes.

> "In interpreting statutes, we primarily determine the legislature's intent. If the language is sufficiently clear, we do not resort to rules of construction. We apply our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous." We construe together all parts of the statutes in pari materia, and, in ascertaining the meaning of a given law, we consider and construe in harmony all statutes relating to the same subject or having the same general purpose.
>
> When the language is not clear or is ambiguous, the court must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of law, and other prior and contemporaneous facts and circumstances, making use of the accepted rules of construction to ascertain a legislative intent that is reasonable and consistent.

*Albertson's, Inc. v. City of Sheridan,* 2001 WY 98, ¶ 7, 33 P.3d 161, ¶ 7 (Wyo.2001) (citations omitted). When the legislature has spoken in unambiguous terms, however, "we are bound to the results so expressed." *Id.* A statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability. *Rawlinson v. Greer,* 2003 WY 28, ¶ 14, 64 P.3d 120, ¶ 14 (Wyo.2003). A statute is ambiguous only if it is found to be

vague or uncertain and subject to varying interpretations. *Id.*

[D]ivergent opinions among parties as to the meaning of a statute may be evidence of ambiguity. However, the fact that opinions may differ as to a statute's meaning is not conclusive of ambiguity. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court.

*McClean v. State*, 2003 WY 17, ¶ 6, 62 P.3d 595, ¶ 6 (Wyo.2003) (citations omitted).

 [¶ 29] We will not insert language into the statutes that the legislature omitted. *Mathewson v. City of Cheyenne*, 2003 WY 10, ¶ 9, 61 P.3d 1229, ¶ 9 (Wyo.2003). A basic tenet of statutory construction is that omission of words from a statute is considered to be an intentional act by the legislature, and this court will not read words into a statute when the legislature has chosen not to include them. *Id.*

[¶ 30] Applying these rules of statutory interpretation to the provisions quoted above, we note first the absence of explicit language stating that the act is intended to abrogate, preserve, or modify the general common-law rule of landlord immunity. The act does not contain a statement of purpose nor does it reference in any manner the common law rule of landlord immunity. It likewise makes no reference to personal injury claims arising from unsafe conditions on rental premises.

[¶ 31] The act does, however, clearly and expressly impose a duty on landlords not previously recognized in Wyoming law. Section 1–21–1202(a) requires landlords to maintain rental units in a safe, sanitary and habitable condition. Section 1–21–1203(a)(i) prohibits landlords from renting premises that are not reasonably safe, sanitary and fit for human occupancy. Ms. Merrill asserts the imposition of the duty is itself sufficient evidence of legislative intent and that an express statement of intent to abrogate the common law is unnecessary—no duty existed before, a duty clearly exists now, therefore, the act abrogated, or at least modified, the common-law rule of landlord immunity.

[¶ 32] In contrast, Ms. Jansma contends the language is insufficient to change the common law of immunity. She argues the act must contain explicit language stating that the common law is abrogated, repealed or modified in order for this court to conclude the legislature intended to change the common law. As examples of statutory enactments containing such express language, Ms. Jansma cites Wyo. Stat. Ann. § 1–39–102(b) of the Wyoming Governmental Claims Act (abolishing judicially created categories for determining governmental immunity or liability), Wyo. Stat. Ann. § 6–1–102 of the Wyoming Criminal Code (abolishing common law crimes), Wyo. Stat. Ann. § 27–14–101(b) of the Wyoming Worker's Compensation Act (providing the common law rule of liberal construction does not apply) and Wyo. Stat. Ann. § 34–20–104(c) of the Condominium Ownership Act (providing common law rules do not apply).

 [¶ 33] It is well-established that legislative intent to repeal the common law will not be inferred absent clear language evidencing that intent. However, effectuation of such repeal does not require the use of some particular word or words. It requires instead plain, unambiguous language making it clear that is what was intended. This Court recognized long ago that "when a common-law procedure or a precedence in the court of common law has prevailed for centuries the statute which abrogates it should be so plainly expressed that nothing is left to disputable inference." *McBride v. Union Pacific Railway Co.*, 3 Wyo. 247, 21 P. 687, 690 (1889). More recently we said:

"It is not to be presumed that the legislature intended to abrogate or modify a rule of the common law by the enactment of a statute upon the same subject; it is rather to be presumed that no change in the common law was intended unless the language employed clearly indicates such [intent].... The rules of common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language."

*Kaycee Land and Livestock v. Flahive*, 2002 WY 73, ¶ 9, 46 P.3d 323, ¶ 9 (Wyo.2002) (citation omitted).

 [¶ 34] Absent a manifestation of legislative intent to repeal a common-law rule, statutes should be construed as consis-

tent with the common law. *Andersen v. Two Dot Ranch, Inc.,* 2002 WY 105, ¶ 13, 49 P.3d 1011, ¶ 13 (Wyo.2002). Statutes are not to be understood as effecting any change in the common law beyond that which is clearly indicated *either by express terms or by necessary implication from the language used. Urbach v. Urbach,* 52 Wyo. 207, 73 P.2d 953, 961 (1937) (emphasis added).

[¶ 35] On the basis of these standards, we have held that legislative intent to abrogate, change or retain common law rules was clear even in the absence of particular words to the effect that the common law was abrogated. The right to sue for wrongful death, for example, did not exist at common law but was purely a creature of statute. *Robinson v. Pacificorp,* 10 P.3d 1133, 1139 (Wyo.2000). The right was recognized as abrogating the common law even though the act did not contain words to that effect. In *O'Donnell v. City of Casper,* 696 P.2d 1278, 1282 (Wyo. 1985), we held the common law rule that a known and obvious danger barred recovery was not compatible with the comparative negligence statute. Although we concluded the common law rule was not completely abrogated by statutory comparative negligence, we indicated the statute modified the known and obvious danger rule—even though the statute did not expressly say it was intended to have that effect. Likewise, the Wyoming legislature has enacted several statutes impacting the common law rules governing livestock running at large, which we have applied in derogation of the common law even though the statutes did not expressly state they repealed the common law. *Andersen,* 49 P.3d at 1020.

[¶ 36] The need for change in the common law pertaining to landlord-tenant relations has been recognized in most other states. This Court likewise acknowledged that change was warranted but declined to act judicially, believing it was a matter for the legislature. Our legislature subsequently acted with the adoption of the Residential Rental Property Act. It acted with plain language that leaves no room for disputable inference. The language of the act does not require us to presume the legislature intended to modify the common law. Nor does it

suggest a change in the common law by doubtful implication or by unclear, ambiguous language. Rather, the language of the act clearly states that landlords have a duty not previously recognized in Wyoming.

[¶ 37] Section 1–21–1202 is entitled "Duties of owners and renters; generally." It requires owners to "maintain [rental property] in a safe and sanitary condition fit for human habitation" and, unless otherwise agreed in writing, to provide "operational electrical, heating and plumbing, with hot and cold running water." Section 1–21–1203 is also entitled "Owner's duties" and subsection (a) delineates the components of the duty described in § 1–21–1202 more specifically—to protect the health and safety of the renter, the owner shall: not rent premises unless they are safe, sanitary and fit for human occupancy; maintain common areas in a sanitary and reasonably safe condition; maintain electrical, plumbing, heating and hot and cold water systems; *and* maintain other aspects of the premises as agreed in the lease.

[¶ 38] These provisions are directly contrary to the common law rule that a landlord owed no duty to a tenant for dangerous or defective conditions of the premises. *Hefferin,* 71 Wyo. 114, 254 P.2d 194. The act clearly and unequivocally changed the common law by requiring landlords to provide rental premises that are reasonably safe, sanitary and fit for human habitation. Electricity, heating, plumbing and hot and cold running water are certainly among the items the landlord must provide. Contrary to Ms. Jansma's argument, however, the act when considered as a whole cannot be reasonably read to say that a landlord who provides electricity, heating, plumbing and hot and cold water has fulfilled his duty. The initial statement of the general duty imposed by § 1–21–1202(a) is broader, contains no limiting language supporting Ms. Jansma's narrow interpretation and is clarified in § 1–21–1203(a) where the duty owed by landlords is more specifically defined to include four separate components, including, not renting premises unless they are safe, sanitary and fit for human occupancy *and* maintaining electrical, plumbing and heating systems.

Given the legislature's use of the conjunction "and" in § 1–21–1203(a) and its delineation of the four specific duties constituting the owner's general duty to provide safe, sanitary and fit premises, we are not persuaded that the duty imposed by the act is limited to providing electrical, heating and plumbing systems, and hot and cold water. We hold that the Residential Rental Property Act imposed a duty on landlords to provide and maintain premises in a safe and sanitary condition fit for human habitation.

[¶ 39] We further hold that this legislatively created duty establishes a new standard of conduct for purposes of personal injuries occurring on rental property. As we said in *McClellan v. Tottenhoff*, 666 P.2d 408, 413 (Wyo.1983), the duty of exercising care to protect another person may exist either at common law or be imposed by statute, and where legislation is silent as to whether it establishes a new standard of conduct for purposes of a tort action, it is up to the judiciary to decide whether it has that effect. Here, the statute imposed the duty, and we conclude that it likewise establishes a new standard of conduct in cases involving personal injuries occurring on rental property— a standard of reasonable care under all of the circumstances. In reaching this conclusion, we act to further the legislature's intent. Our holding is also influenced by the following comment:

> If one can extricate himself from all the prevailing preconceptions concerning the nature of this problem, the most simple and obvious avenue to defining a landlord's tort liability respecting the condition of leased premises is to brush aside contracts, warranty, or statutory violations, and declare a rule of reasonable care, which includes the duty to respond reasonably to the need for action and to act reasonably in doing so.... In most states having new statutes that impose a similar general obligation on landlords, courts by construction could ... treat the statutes as enlarging a landlord's duty....

*Browder, supra,* at 124.

[¶ 40] In concluding that the act does away with the common law rule and its exceptions and imposes a duty of reasonable care under the circumstances, we also point to the rule that we are to presume the legislature enacts statutes with full knowledge of existing law. *Parker,* 845 P.2d at 1044. We do not review statutes in isolation but rather construe them in relation to and in harmony with existing law and as part of a general and uniform system of jurisprudence. *Id.* Our legislature enacted the Residential Rental Property Act at a time when landlord-tenant law was undergoing massive changes nationwide. Numerous states had already enacted the URLTA. The vast majority of other states, either by legislation or by judicial decision, had adopted similar rules of law imposing a duty on landlords. We had expressly deferred similar action to our state legislature. Accordingly, we presume the legislature enacted the Residential Rental Property Act with full knowledge of the law in Wyoming that, with only limited exceptions, a landlord historically had no duty to maintain rental premises. We also presume the legislature enacted the provision with full knowledge that the trend nationwide has been to replace the no-duty rule and impose a duty on landlords to keep rental property safe. We further presume the legislature promulgated the act with full knowledge that this Court declined to judicially change the common law rule on several occasions because in our view it was a matter for the legislature. Making these presumptions, and looking at the plain language used by the legislature, we do not find the act to be vague or uncertain or subject to varying interpretations. In providing that the owner of rental property and his agent have a duty to "maintain that unit in a safe and sanitary condition fit for human habitation," the legislature has spoken in unambiguous terms and we are bound to the results so expressed. *Albertson's,* ¶ 7. We turn to the question whether Ms. Merrill's claim is precluded because she failed to give written notice of the broken step as required in the act.

#### d. The notice provision

[¶ 41] As set forth above, § 1–21–1203(b) requires a tenant who has a reasonable belief supported by evidence that the premises are not safe, sanitary and fit for habitation to

advise the landlord in writing of the defective condition and the corrective action he wants the landlord to take. Section 1–21–1206(b) further provides that if the landlord does not respond to the first notice, the tenant may serve a second notice. If the landlord again fails to respond or disputes the claim, the tenant then may file a civil action in county or justice of the peace court under § 1–21–1206(c). Upon showing the landlord unreasonably refused or failed to use diligence to correct an unsafe condition, the tenant may recover costs, damages, including rental payments, and affirmative relief which may include termination of the lease or an order directing the landlord to make reasonable repairs.

[¶ 42] Pursuant to the clear language of the act, there is no question the tenant is required to provide written notice to the landlord before he is entitled to the relief available under § 1–21–1206. The act uses the word "shall" in describing the renter's obligation to provide written, certified notice to the landlord, a word usually accepted by this Court as a mandatory term. *Stewart Title Guaranty Co. v. Tilden,* 2003 WY 31, ¶ 7, 64 P.3d 739, ¶ 7 (Wyo.2003). Where a statute uses the mandatory language "shall," a court must obey the statute and has no right to make the law contrary to what the legislature prescribed. *In re: DCP,* 2001 WY 77, ¶ 16, 30 P.3d 29, ¶ 16 (Wyo.2001). Therefore, for purposes of the remedies available under the Residential Rental Property Act, Ms. Pritchard was required to advise Ms. Jansma in writing of the condition of the step. Her failure to provide the notice required precludes any claim Ms. Merrill may have had to the relief available under the act.

[¶ 43] Ms. Merrill, however, did not seek the relief available under the act. She did not seek to recover damages for rent improperly retained nor did she seek termination of the rental agreement or an order directing Ms. Jansma to make reasonable repairs. She also did not seek damages available in county or justice of the peace court, courts of limited jurisdiction that are not statutorily authorized to hear cases involving claims in excess of $7000 and $3000 respectively.[8] Instead, Ms. Merrill sought personal injury damages, including medical expenses exceeding $25,000, pain and suffering, loss of enjoyment of life and lost earnings—damages clearly not contemplated by the Residential Rental Property Act and, in the case of her claims for emotional damages, expressly precluded by § 1–21–1203(e) of the act.

[¶ 44] We have said, "[r]emedial statutes are presumed to provide remedies in addition to those which existed at common law and equity, unless a clear intent is expressed to make the statutory remedy exclusive." *Urbach,* 73 P.2d at 961. The language used in the Residential Rental Property Act suggests the legislature intended the remedies available under the act to be aimed at corrective action—either getting the landlord to fix the problem or reimbursing the tenant for back rent or letting him out of the lease. There is nothing to suggest the legislature intended the remedies to be the exclusive remedy in all actions arising out of the landlord-tenant relationship. There likewise is nothing to suggest the legislature intended the remedies to preclude the usual remedies for personal injury. This conclusion is supported by the decisions of other courts that have addressed the issue.

[¶ 45] In *Shroades v. Rental Homes, Inc.,* 68 Ohio St.2d 20, 427 N.E.2d 774 (1981), the court addressed the remedies available under the Ohio Landlords and Tenants Act by stating:

> [T]he remedies provided in [the Act] are cumulative.... For example, the remedy of depositing rental payments with the clerk of court is grossly inadequate to compensate tenants for the types of [personal] injuries sustained in the present case ... An alternative remedy of termination of the lease is also not an adequate or viable option for many tenants when there is a lack of availability of other

---

8. Under the statutes in effect at the time of Ms. Merrill's injury, county court jurisdiction was limited to claims not exceeding $7,000.00 (Wyo. Stat. Ann. § 5–9–128, (LexisNexis 2001)) and justice of the peace courts were limited to claims not exceeding $3,000.00 (Wyo. Stat. § 5–4–106 (LexisNexis 2001)).

apartments and considering the costs involved in relocating. Thus, the new remedies given tenants in [the Act] are intended to be preventive and supplemental to other remedial measures.

*Id.* at 777 (citations omitted). Similarly, in *Jones v. Bierek,* 88 Or.App. 11, 743 P.2d 1153 (1987), the landlord argued Oregon's Residential Landlord and Tenant Act (ORLTA) replaced all common law actions between landlord and tenants and, therefore, a one year statute of limitations applied rather than the two year limitation period for negligence claims. The court rejected the argument, concluding the statutory provisions and legislative history did not clearly evince an intention to replace negligence claims between landlord and tenant. The court said, "it is highly unlikely the legislature would eliminate a large segment of the state's tort law ... without explicitly spelling out its intention to do so. We treat plaintiff's pleadings as stating cognizable claims for negligence." *Id.* at 1154.

 [¶ 46] Paraphrasing what the court said in *Newton,* 872 P.2d at 1217, it would be inconsistent with the duty to maintain imposed by the act to exempt from tort liability a landlord who fails in this duty. Our legislature by adopting the act has manifested acceptance of the policy reasons behind the URLTA and other statutes and judicial decisions imposing a duty on landlords. Maintaining the common law rule and its exceptions in personal injury cases, while imposing a new duty only in cases seeking repair, return of rent or termination of the lease, cannot be squared with that policy. It simply makes no sense to permit a tenant to withhold rent or terminate a lease because of a broken step while denying him a remedy for personal injuries sustained as a result of it. *See also Browder, supra,* at 125. We hold that the remedies provision of the act is exclusive to cases in which corrective action is sought and does not apply in personal injury actions. Therefore, Ms. Pritchard's failure to provide written notice of the bro-

ken step as required under § 1–21–1203(b) does not preclude Ms. Merrill's claim.

### 2. Restatement (Second) of Torts, § 326.

 [¶ 47] In her complaint, besides claiming Ms. Jansma breached the duty imposed by the Residential Rental Property Act, Ms. Merrill also claimed she breached the duty imposed by § 326 of the Restatement (Second) of Torts.[9] Our resolution of the first issue makes discussion of the second issue unnecessary—the common law and its exceptions, including Restatements (Second) of Torts § 326, no longer apply.

### CONCLUSION

[¶ 48] With the enactment of the Residential Rental Property Act, Wyoming joined the majority of other states by modifying the rule of landlord immunity and imposing a duty on owners of rental property to maintain them in a safe, sanitary and habitable condition. The imposition of that legislatively created duty gives rise to a new standard of care applicable in cases involving personal injuries occurring on rental property, i.e. reasonable care under the circumstances. Upon establishing that a breach of this standard proximately caused injury, the injured party is entitled to prove any damages recoverable in a personal injury claim. The remedies provided for in the act are limited to cases where corrective action is sought by a tenant in the form of an order requiring the landlord to make repairs, refund or excuse rental payments or allow the tenant to be excused from the lease.

[¶ 49] Reversed and remanded for further proceedings.

---

9. § 362. Negligent Repairs by Lessor. A lessor of land who, by purporting to make repairs on the land while it is in the possession of his lessee, or by the negligent manner in which he makes such repairs has, as the lessee neither knows nor should know, made the land more dangerous for use or given it a deceptive appearance of safety, is subject to liability for physical harm caused by the condition to the lessee or to others upon the land with the consent of the lessee or sublessee.