Kristen ZEHNER, James C. Williams,
Gary Waalkens, Judy Waalkens, Bonnie Shannon,
Joan Hackbarth, Walter Shakstad,
Eleanor Shakstad and Wisconsin Manufactured
Home Owners Association, Inc.,
Plaintiffs-Appellants,

v.

VILLAGE OF MARSHALL and American Mobile Home
Communities Limited Partnership IV,
Defendants-Respondents.

Court of Appeals

*No. 2004AP2789. Submitted on briefs May 23, 2005.
—Decided December 8, 2005.*

2006 WI App 6

(Also reported in 709 N.W.2d 64.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *David R. Sparer* of *Herrick & Kasdorf, LLP*, Madison.

On behalf of the defendant-respondent Village of Marshall, the cause was submitted on the brief of *Raymond J. Pollen* and *Amy J. Doyle* of *Crivello, Carlson & Mentkowski, S.C.*, Milwaukee.

On behalf of the defendant-respondent American Mobile Home Communities Limited Partnership IV, the cause was submitted on the brief of *Scott G. Pernitz* and *Karen L. Riemer* of *Winner, Wixson & Pernitz*, Madison.

Before Lundsten, P.J., Vergeront and Deininger, JJ.

¶ 1. LUNDSTEN, P.J. This case involves a lawsuit by mobile home park renters against their landlord and their municipality. The claims in the suit relate to water and sewer fees billed to the landlord by the municipality. Appellants Kristen Zehner, James Williams, Gary Waalkens, Judy Waalkens, Bonnie Shannon, Joan Hackbarth, Walter Shakstad, and Eleanor Shakstad (collectively the renters) own mobile homes. They rent space for their homes in a mobile home park, owned by American Mobile Home, located in the Village of Marshall.[1] The renters appeal orders of the circuit court dismissing their complaint against the Village and American Mobile Home for failure to state a claim. The renters allege the Village charges American Mobile Home water/sewer fees that are unjust, unreasonable, and non-uniform when compared with fees paid by

---

[1] The Wisconsin Manufactured Home Owners Association, Inc., a non-renter, is also an appellant, but for ease of discussion we refer to the appellants as the renters.

other Village residents. The renters allege the higher fees are passed on to them through the rents they pay. They also allege that American Mobile Home breached its obligation under the common law, the administrative code, and the statutes to maintain its sewer system in a reasonable state of repair. Their complaint seeks declaratory judgment against the Village, and damages and a declaratory judgment against American Mobile Home.

¶ 2. The renters contend the circuit court erred in concluding that they lacked standing to challenge the water/sewer fees the Village charges American Mobile Home. The renters also argue the circuit court erred in determining that they did not state a claim upon which relief could be granted against American Mobile Home under common law, the administrative code, or the statutes. We affirm the circuit court.[2]

### *Background*

¶ 3. Because the issue on appeal is whether the renters' complaint states a claim, the pertinent facts are those alleged in the complaint, which are as follows.

¶ 4. The renters own mobile homes situated in a mobile home park owned and managed by American

---

[2] The renters filed a motion for default judgment against American Mobile Home because the attorneys who signed American Mobile Home's motion to dismiss were not licensed to practice law in Wisconsin. Relying on *Davis v. City of Elkhorn*, 132 Wis. 2d 394, 398–99, 393 N.W.2d 95 (Ct. App. 1986), the circuit court concluded that the renters' motion for default judgment could succeed only if their complaint stated a claim upon which relief could be granted. The renters do not challenge the circuit court's reliance on *Davis*. Because we affirm the circuit court's conclusion that the complaint fails to state a claim, there is no reason to address the default judgment issue.

Mobile Home. The park is located within the Village of Marshall. The renters own the mobile homes in which they live, but they rent the lots on which the homes sit from American Mobile Home.

¶ 5. The sewer system in the mobile home park is defective. Groundwater infiltrates the park's sewer pipes, thereby increasing the volume of sewage going into the Village sewer system from the park.

¶ 6. The Village determines the charges assessed to residents for the water and sewer system, including American Mobile Home. Water inflow and sewer outflow are charged as a single service with a single fee by the Village. The Village charges American Mobile Home for water/sewer service based on sewer outflow volume. The Village charges all other Village residents for water/sewer service based on water inflow. The Village began using the different billing method for American Mobile Home because the Village determined that American's mobile home park was responsible for significant groundwater infiltration into the sewer system. The Village has the authority to require American Mobile Home to repair its sewer equipment to stop groundwater infiltration, but the Village chose to address the issue by charging American Mobile Home water/sewer fees based on sewer outflow. The result is that American Mobile Home is charged more than if it were charged based on water inflow like other Village residents, and more than if American Mobile Home repaired its sewer line.

¶ 7. American Mobile Home's water/sewer fees are based on the collective sewer outflow of the entire park; the fees are not based on individual meter readings. The water/sewer fees are paid by American Mobile Home. The water/sewer fees are approximately $102,314 more per year because of the different billing

method and the defective mobile home park sewer
pipes. Because there are 295 lots in the park, the extra
amount on a per renter basis is about $360 each year.[3]
This additional amount is "passed on to the individual
residents of [the mobile home park] by [American
Mobile Home] . . . as part of [the renters'] monthly lot
rent."

### *Discussion*

¶ 8. The standards applicable to our review of
whether a complaint states a claim are well established.
They were recently summarized in *John Doe 67C v.
Archdiocese of Milwaukee*, 2005 WI 123, 284 Wis. 2d
307, 700 N.W.2d 180:

> We review de novo the circuit court's dismissal of a
> complaint for failure to state a claim. A motion to
> dismiss for failure to state a claim "tests the legal
> sufficiency of the complaint." A reviewing court "ac-
> cept[s] the facts pled as true for purposes of [its] review,
> [but is] not required to assume as true legal conclusions
> pled by the plaintiffs." Although the court must accept
> the facts pleaded as true, it cannot add facts in the
> process of liberally construing the complaint. Rather,
> "[i]t is the sufficiency of the facts *alleged* that control[s]
> the determination of whether a claim for relief" is
> properly pled.
>
> The court should not draw unreasonable inferences
> from the pleadings. After liberally construing the com-
> plaint, a court should dismiss a plaintiff's claims if it is
> "quite clear" that there are no conditions under which
> that plaintiff could recover. In other words, "A claim
> should not be dismissed . . . unless it appears to a

---

[3] $102,314 divided by 295 equals $346.83. The complaint,
however, alleges "approximately $360.00 per year" per resident,
so we will use that number.

certainty that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations."

*Id.*, ¶¶ 19–20 (citations omitted).

*A. The Renters' Claim Against The Village Of Marshall*

¶ 9. The complaint seeks a declaratory judgment against the Village. The complaint alleges that the Village is obligated to maintain just, reasonable, and uniform water/sewer fees for all users, and that the fees it charges American Mobile Home are not just, reasonable, and uniform. The complaint alleges the renters have been and will continue to be harmed by the unjust, unreasonable, and non-uniform fees charged to American Mobile Home because these fees are passed on to the renters through higher monthly rents.[4]

¶ 10. The renters argue the circuit court erred in concluding that they lack standing to bring a declaratory judgment action against the Village. In *Chenequa Land Conservancy, Inc. v. Village of Hartland*, 2004 WI App 144, 275 Wis. 2d 533, 685 N.W.2d 573, we explained the requirements for maintaining an action for declaratory judgment:

> In order to maintain an action for declaratory judgment, there must be a justiciable controversy, which exists when these requirements are met:

---

[4] Although the complaint requests damages for current and past overcharges and asks that the circuit court determine whether the Village or American Mobile Home should pay those damages, on appeal the renters address their claim against the Village only in terms of the circuit court's dismissal of the renters' request for declaratory relief. For that reason, we address only the renters' request for a declaratory judgment.

(1) A controversy in which a claim of right is asserted against one who has an interest in contesting it.

(2) The controversy must be between persons whose interests are adverse.

(3) The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.

(4) The issue involved in the controversy must be ripe for judicial determination.

*Id.,* ¶ 11 (quoting *Loy v. Bunderson,* 107 Wis. 2d 400, 410, 320 N.W.2d 175 (1982)). The third requirement, "often expressed in terms of standing," *Chenequa,* 275 Wis. 2d 533, ¶ 12, is dispositive here.

¶ 11. To have standing, a party must "have suffered or be threatened with an injury to an interest that is legally protectible, meaning that the interest is arguably within the zone of interests" that a statute or constitutional provision, under which the claim is brought, seeks to protect. *Id.,* ¶ 16. Whether a party has standing to seek declaratory relief is a question of law, which we decide *de novo. Town of Baraboo v. Village of West Baraboo,* 2005 WI App 96, ¶ 35, 283 Wis. 2d 479, 699 N.W.2d 610.

¶ 12. The renters assert that the rate scheme the Village applies to the mobile home park violates various statutes and administrative code provisions. Pertinent here is the fact that the renters concede they have no direct rights under these provisions. For example, they assert the rate scheme applied to the park is discrimi-

natory under WIS. STAT. § 66.0821 (2003–04),[5] but agree they may not complain directly under that statute because they are not "users" of the service within the meaning of § 66.0821(5). The renters argue that their only means of getting relief is by obtaining a declaratory judgment against the Village, forcing the Village to change how it bills American Mobile Home. The apparent goal is to compel the Village to charge American Mobile Home based on water inflow or to compel the Village to force American Mobile Home to repair its sewer line. We are not persuaded that the renters have identified a legally protectible interest that would confer the standing necessary to obtain relief.

¶ 13. Taking the facts alleged in the complaint as true, they do not establish the sort of direct effect on the renters necessary to confer standing. In particular, the renters have not alleged that, if they prevail, American Mobile Home would be required to reduce their rent. Thus, declaratory relief against the Village may or may not have an effect on the renters. A beneficial effect to the renters is, therefore, speculative. "A justiciable controversy requires the existence of present and fixed rights. A declaratory judgment will not determine hypothetical or future rights." *City of Janesville v. Rock County*, 107 Wis. 2d 187, 199, 319 N.W.2d 891 (Ct. App. 1982).

¶ 14. We note that if the renters here have standing to obtain declaratory relief, it would seem that renters have standing in a wide variety of situations where landlords are arguably overcharged. For example, renters in an apartment building could go to

---

[5] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

court and challenge the property value assessment of the building for property tax purposes because of an alleged effect on rent. For that matter, it would seem that renters could obtain declaratory relief if they proved that a building owner was paying higher costs because the owner was not getting all the owner was entitled to under a service contract with a private company. We think it apparent that a more direct connection is required to confer standing.

¶ 15. The renters rely on *Ramme v. City of Madison*, 37 Wis. 2d 102, 154 N.W.2d 296 (1967). But a close reading of *Ramme* supports our conclusion that the renters here lack standing.

¶ 16. In *Ramme*, a mobile home occupant challenged a statutory scheme that gave mobile home park owners, but not occupants, the right to appeal the amount of a "parking permit fee" assessed against each occupied mobile home by municipalities. *Id.* at 105–06. Under the statutes, the mobile home park owner was liable for the fee and paid it to the city. The responding party in *Ramme* was the City of Madison. The city argued:

> [T]he fee is an excise tax levied *against the landowner, not the trailer occupant;* that the statute merely permits the tax to be passed on to the occupant and the city has no method of enforcing collection from the occupant; that, *therefore, the trailer occupant is in exactly the same position as users of services or products subject to ordinary excise taxes in that these taxes are too remote, indirect, and incidental to allow them to challenge the validity of the tax.* Since the city cannot collect the tax from the occupant, respondent argues, the occupant has no right which need be protected.

*Id.* at 109–10 (emphasis added). "[A] party must be

670

*directly affected* by the issues in controversy" to confer standing. *Id.* at 116 (emphasis added). Therefore, the court seemingly assumed that the indirect nature of the effect of the parking permit tax on the mobile home park owners would defeat standing, and turned its attention to whether the tax was a direct or indirect tax. *Id.* at 110–12.

¶ 17. The statutes at issue in *Ramme* directed that the parking permit tax be "collected" by the park owner from the mobile home occupants and that the occupants, as well as the park owners, were "liable" for the tax. *Id.* at 110–11. Thus, even though the tax was normally collected by the city from the park owner, the occupants were the "direct objects of the tax." *Id.* at 111. Because of this direct effect, the court concluded that the occupants had standing to challenge the "parking permit fee" and to obtain declaratory relief. *Id.* at 111–17. In contrast, the renters here do not allege that they are the direct objects of the water/sewer fees, and they do not assert that they are directly liable for the fees.

¶ 18. Another part of the *Ramme* decision supports our conclusion that the renters' interest here is too indirect to confer standing to bring a declaratory judgment action. The *Ramme* court discussed at length a provision in the statute at issue that gave landowners the right to appeal the tax. *Id.* at 113–16. In addressing why mobile home occupants were not afforded the same statutory right, the court explained that, when the parking permit statute was enacted, mobile home park licensees—who may not be the same entity as the park owner—and mobile home occupants did not need a statutory grant of standing because they had standing by virtue of being the direct objects of the tax. *Id.* at 114–16. In contrast, at the time the statute was en-

671

acted, a non-licensee landowner was not directly liable for the tax, and would not have had standing unless standing was conferred by the statute. *Id.* Pertinent here, despite the fact that an excessive tax may have had a "substantial adverse effect on [a non-licensee landowner] by making his land undesirable for use as a trailer park," the effect of the tax was too "indirect" to confer standing on the landowner. *Id.* at 116. The injuries the renters allege here are similarly insufficiently direct to confer standing.

¶ 19. Before leaving this topic, we briefly address the renters' argument that they have standing because they are in danger of losing their rights to occupy their homes. The renters rely on the following hypothetical situation:

> Municipalities, including the Village of Marshall, are entitled to charge for the sewer services they provide, pursuant to § 66.0809 WI Stats. If the owner, whether [American Mobile Home] or some other, does not pay in whole or in part, after certain notice procedures, the Village is allowed to make the unpaid amounts, plus penalties, part of the real estate tax due, and is entitled, pursuant to § 66.0809 WI Stats., to foreclose upon the property in a tax sale if these sums are not paid. If the property gets sold in such a tax sale, not only would [American Mobile Home] lose its property, but the Plaintiffs, and all other resident owners of the individual homes, would have their leases, and rights to occupancy extinguished.

This again, if true, constitutes an indirect effect only. Further, the renters' hypothetical involves much speculation about what might or might not occur. We repeat, "[a] justiciable controversy requires the existence of present and fixed rights. A declaratory judgment will

not determine hypothetical or future rights." *City of Janesville*, 107 Wis. 2d at 199.

¶ 20. In sum, the renters have failed to show that they have suffered, or are threatened with, an injury to a legally protectible interest. The renters, therefore, lack standing to bring a declaratory judgment action challenging the fees the Village charges American Mobile Home for water and sewer services.

*B. The Renters' Claim Against American Mobile Home*

¶ 21. The renters argue the circuit court erred in concluding that their complaint fails to state a claim against American Mobile Home upon which relief may be granted. The renters contend that American Mobile Home has an obligation under the common law, the administrative code, and the landlord-tenant statutes to repair the sewer line and, thus, reduce sewer outflow and the water/sewer fees charged by the Village. We are not persuaded.

1. Obligation Under Common Law

¶ 22. In support of the contention that American Mobile Home is under a common law duty to make the requested repairs to its sewer line, the renters rely on *Pagelsdorf v. Safeco Insurance Co. of America*, 91 Wis. 2d 734, 284 N.W.2d 55 (1979), and *Pines v. Perssion*, 14 Wis. 2d 590, 111 N.W.2d 409 (1961). Neither case, however, supports a cause of action against American Mobile Home relating to the defective sewer line.

¶ 23. In *Pagelsdorf*, the court was concerned solely with a landlord's tort liability for injuries incurred on leased premises. *Pagelsdorf*, 91 Wis. 2d at

673

735. The *Pagelsdorf* court held that a landlord owed a duty of ordinary care to his or her tenant and the tenant's invitees with respect to injuries caused by defective premises. *Id.* The renters' complaint here does not arguably assert a negligence claim and, therefore, *Pagelsdorf* is inapplicable.

¶ 24. In *Pines*, the supreme court adopted the common law doctrine of the implied warranty of habitability. *Pines*, 14 Wis. 2d at 594–96. That doctrine has been codified at Wis. Stat. § 704.07(4). *Antwaun A. v. Heritage Mut. Ins. Co.*, 228 Wis. 2d 44, 72–73, 596 N.W.2d 456 (1999). The renters' complaint here does not allege that the sewer line defect affected the habitability of the mobile homes, and the renters admit that they do not advance a claim under § 704.07(4).

¶ 25. Thus, neither *Pagelsdorf* nor *Pines* supports the renters' assertion that they have stated a common law claim.

### 2. Obligation Under The Administrative Code

¶ 26. The renters argue that Wis. Admin. Code § PSC 186.76 imposes a duty on American Mobile Home to make the repairs to the sewer line at issue here. However, this code provision does not require repairs. Rather, it allocates the cost of repairs and maintenance of water and sewer laterals between mobile home park operators and mobile home occupants.[6] That is, *if* repairs are made, the code specifies who must pay. The

---

[6] Wisconsin Admin. Code § PSC 186.76 (Nov. 1999) states:

**Maintenance of water and sewer laterals. (1)** Thawing of a mobile home park occupant's frozen lateral shall be at the mobile home park occupant's expense unless:

674

question of who would bear the cost of repairs if they are made is not an issue here.

3. Obligation Under The Landlord-Tenant Statutes

■

¶ 27. Finally, the renters argue they have stated a claim under Wɪs. Sᴛᴀᴛ. § 704.07(2). They rely on the following subsection (2) language:

> Dᴜᴛʏ ᴏғ ʟᴀɴᴅʟᴏʀᴅ. (a) Except for repairs made necessary by the negligence of, or improper use of the premises by, the tenant, the landlord has a duty to do all of the following:
>
> . . . .
>
> 2. Keep in a reasonable state of repair all equipment under the landlord's control necessary to supply services that the landlord has expressly or impliedly agreed to furnish to the tenant, such as heat, water, elevator, or air conditioning.

The circuit court disagreed, concluding that subsection

(a) The freeze-up is a direct result of a disconnect initiated by the mobile home park operator or mobile home park contractor and the disconnection occurs during a time when conditions are such that freeze-up could reasonably be expected to occur.

(b) The freeze-up is a result of a deficiency in the mobile home park distribution or collection system.

(2) All other maintenance of water and sewer laterals shall be at the expense of the mobile home park operator or mobile home park contractor unless the water and sewer lateral is physically damaged by the activities of the mobile home park occupant or by the discharge of improper materials into the sewer lateral by the mobile home park occupant. Improper materials include, but are not limited to, such materials as: any flammable or explosive liquids, solids, or gases; wastes having a pH lower than 5.0 or in excess of 10.0; or solid or viscous substances in quantities or of such size capable of causing obstruction to the flow in the lateral.

(4) of § 704.07 provides the exclusive remedies for a violation of subsection (2), and that subsection (4) does not authorize the relief the renters seek. We agree with the circuit court.

¶ 28. Subsection (4) of Wis. Stat. § 704.07 confers on tenants specific rights if a violation of subsection (2) "materially affect[s] the health or safety of the tenant." Generally speaking, subsection (4) permits a tenant to vacate and withhold rent, depending on the circumstances. Subsection (4) provides:

> UNTENANTABILITY. If the premises become untenantable because of damage by fire, water or other casualty or because of any condition hazardous to health, or if there is a substantial violation of sub. (2) materially affecting the health or safety of the tenant, the tenant may remove from the premises unless the landlord proceeds promptly to repair or rebuild or eliminate the health hazard or the substantial violation of sub. (2) materially affecting the health or safety of the tenant; or the tenant may remove if the inconvenience to the tenant by reason of the nature and period of repair, rebuilding or elimination would impose undue hardship on the tenant. If the tenant remains in possession, rent abates to the extent the tenant is deprived of the full normal use of the premises. This section does not authorize rent to be withheld in full, if the tenant remains in possession. If the tenant justifiably moves out under this subsection, the tenant is not liable for rent after the premises become untenantable and the landlord must repay any rent paid in advance apportioned to the period after the premises become untenantable. This subsection is inapplicable if the damage or condition is caused by negligence or improper use by the tenant.

The circuit court reasoned that because the renters had not alleged untenantability or a substantial violation of

subsection (2) materially affecting their health or safety, the renters had not stated a claim under § 704.07.

¶ 29. The renters argue that subsection (4) of Wis. Stat. § 704.07 does not apply to all violations of subsection (2), but rather only to a violation of subsection (2) that materially affects a tenant's health and safety. The renters contend that subsection (2) authorizes an independent cause of action for defective conditions that do not rise to the level of a health or safety hazard, but are nonetheless the result of the failure of a landlord to maintain equipment in a reasonable state of repair. American Mobile Home responds that subsection (4) is an exclusive remedy clause for violations of subsection (2), and that *Logterman v. Dawson*, 190 Wis. 2d 90, 526 N.W.2d 768 (Ct. App. 1994), supports this view. We agree with American Mobile Home.

¶ 30. *Logterman*, like this case, involved a mobile home park and a defective utility system. In *Logterman*, the defective system was a septic system. *Id.* at 97. The Logtermans owned a mobile home and rented a lot from the park owner. The county sanitation department issued an order requiring the park owner to replace or abandon all failing septic systems, an order that included the lot rented by the Logtermans. *Id.* at 97–99. The park owner chose to abandon the septic system serving the Logtermans' lot. *Id.* at 98. The owner informed the Logtermans that if the mobile home were to be occupied, it would need to be moved to a different site within the mobile home park. *Id.* The Logtermans filed suit.

¶ 31. Among several arguments, the Logtermans contended that the park owner violated her obligation under subsection (2) of Wis. Stat. § 704.07 to maintain

the septic system in reasonable repair and that this violation diminished the value of their mobile home. *See Logterman*, 190 Wis. 2d at 108–09. We rejected this argument, explaining that subsection (4) of § 704.07 limits the remedies for a violation of subsection (2):

> Further, even accepting the Logtermans' argument that [the park owner] violated [Wis. Stat. § 704.07(2)] by failing to keep the septic in a reasonable state of repair, the law does not entitle the Logtermans to the remedy which they seek. *Section 704.07(4) limits a tenant's remedy to rent abatement for the period of time the property is untenable* [sic] *or nonliability for rent for the term of the lease if the tenant is forced to permanently vacate.* In this case, therefore, had [the park owner] breached her duty to provide adequate septic service such that the Logtermans were forced to move, the Logtermans' remedy under § 704.07 would be nonliability for the remaining lease amount.
>
> However, § 704.07, Stats., does not entitle the Logtermans to damages representing the value of their mobile home as they alleged.

*Logterman*, 190 Wis. 2d at 109 (emphasis added). Our underlying reasoning is clear: subsection (4) of § 704.07 is the exclusive remedy for violations of subsection (2). In effect, we concluded that § 704.07 is intended to require reasonable maintenance that ensures a safe and tenantable premises, but the statute does not create a right of action for defects that do not "materially affect[] the health or safety of the tenant" or affect tenantability.

¶ 32. Applying *Logterman* here, to maintain an action under Wis. Stat. § 704.07, the renters needed to allege that the condition of the sewer pipes either made the property untenantable or that the failure to main-

tain the sewer pipes affected the renters' health or safety. They alleged neither.

### *Conclusion*

¶ 33. We affirm the circuit court's conclusion that the renters lack standing to challenge the rates the Village charges American Mobile Home for water and sewer service. We also affirm the circuit court's conclusion that the renters failed to state a claim against American Mobile Home. Thus, we affirm the circuit court's orders dismissing the complaint.

*By the Court.*—Orders affirmed.