**COURT OF APPEALS**

**DECISION**

**DATED AND FILED**

**November 21, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP631**

Cir. Ct. No. **2017SC7268**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

MCKEAN REAL ESTATE, LLC,

  PLAINTIFF-RESPONDENT,

V.

NANCY MARQUARDT,

  DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Dane County: RICHARD G. NIESS, Judge. *Affirmed*.

¶1  BLANCHARD, J.[1]  Nancy Marquardt appeals the order of the circuit court in this landlord-tenant small claims dispute. McKean Real Estate,

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

LLC, attempts in its briefing to contest part of the circuit court's order, but has failed to file the requisite notice of appeal or cross-appeal. The court awarded monetary damages to both McKean and Marquardt, which when netted resulted in a judgment in favor of McKean. For the following reasons, I reject Marquardt's arguments, disregard McKean's purported cross-appeal, and accordingly affirm.

## BACKGROUND

¶2     Marquardt was a tenant in an apartment unit in McKean's building when, in December 2016, a pipe connected to a toilet in Marquardt's unit leaked. This leak resulted in substantial damage to her unit and to two units below it. In May 2017, Mark McKean, the sole member of McKean Real Estate, LLC, notified Marquardt that he would not renew her lease when it expired on August 31, 2017. McKean took the position that Marquardt had violated a term in the lease by failing to maintain sufficient heat in the unit, resulting in the pipe leaking and causing damage, and that she had refused to pay for this damage.[2] Marquardt held over after expiration of the lease for one-half month, failing to move out until September 15, 2017.

¶3     McKean commenced this action in November 2017, alleging that, under Marquardt's lease, she was responsible for damages totaling $2,823. These alleged damages included water damage caused by the leaking pipe, as well as expenses incurred by McKean for "extraordinary" cleaning and maintenance work that was required after Marquardt moved out of the unit.

---

[2] Under Marquardt's lease, "[i]f damage results from [Marquardt's] failure to maintain a reasonable amount of heat, [Marquardt is] liable for this damage."

¶4    Marquardt filed a counterclaim alleging that she was entitled to damages for six reasons: (1) McKean improperly withheld Marquardt's security deposit; (2) McKean failed to provide her with an itemization of withholdings from her security deposit within 21 days of her vacating the unit; (3) there was no functioning washing machine in the unit, as required in the lease; (4) Marquardt had to pay moving expenses because McKean unlawfully evicted her as retaliation against her; (5) McKean caused damage to her property; and (6) Marquardt lost pay as a result of missed work due to her move out of the apartment and time spent litigating this action.

¶5    After a hearing before a court commissioner, Marquardt filed a demand for a trial de novo in the circuit court. At trial, Mark McKean and Gary Butenhoff, a maintenance worker at the apartment building, both testified that Marquardt was responsible for the water damage resulting from the leaking pipe and for leaving the unit in a condition requiring extensive cleaning and repair. Marquardt testified that she had not caused any of the damage and that she had cleaned the unit before vacating it. She also testified that McKean's maintenance workers had caused damage to her personal property after entering her unit to repair the leaking pipe, and that other personal property was damaged in an unrelated incident of water leaking into the garage of the unit.

¶6    The circuit court found that Marquardt was responsible for the water damage resulting from the leak in the toilet pipe because she failed to maintain adequate heat in the unit as required by her lease, resulting in the pipe freezing. The court also found that the unit "required extraordinary clean-up, repair[,] and vermin extermination as a result of the deplorable condition in which [Marquardt] maintained the apartment during her lease period." The court ruled that McKean was entitled to recover expenses for clean-up that exceeded the amount necessary

to address normal wear and tear. The court also determined that Marquardt owed rent for the one-half month that she admitted she had held over, doubled under WIS. STAT. § 704.27. However, the court offset the total amount to which McKean was entitled by awarding Marquardt damages due to McKean's failure to send to Marquardt within the required time period a security deposit accounting. The court denied the rest of Marquardt's counterclaims.

¶7      Marquardt, pro se, appeals the portion of the judgment finding her responsible for damage to the unit and awarding McKean monetary damages. Marquardt also argues that she is entitled to damages due to property damage, her inability to use the washing machine in her unit, and retaliatory action taken by McKean.

## DISCUSSION

¶8      I first discuss Marquardt's arguments on appeal, then briefly address McKean's arguments purporting to raise a cross-appeal.

¶9      In the main, Marquardt essentially challenges various factual findings made by the circuit court. The problem with most of Marquardt's arguments is that findings of fact by a circuit court will not be set aside on appeal unless they are clearly erroneous and she fails to establish that the circuit court's factual findings were clearly erroneous. *See* WIS. STAT. § 805.17(2). The clearly erroneous standard of review requires an appellate court to uphold a circuit court's findings unless they are contrary to the great weight and clear preponderance of the evidence. *Phelps v. Physicians Ins. Co. of Wis., Inc.*, 2009 WI 74, ¶55, 319 Wis. 2d 1, 768 N.W.2d 615.

4

¶10    First, Marquardt argues that the court's finding that she was responsible for the water damage resulting from the pipe leak was erroneous because "it was based on communication presented by Mark McKean and not actual evidence." I summarize pertinent testimony in order to place Marquardt's argument in context.

¶11    Mark McKean testified that, upon learning of the leak, he and Butenhoff entered the unit together to inspect for damage. McKean testified that there was no heating register in the bathroom where the pipe at issue was located and that Marquardt had set her thermostat at "its minimum setting." He also testified that Marquardt appeared to have "filled the apartment up with plastic soda bottles and cardboard boxes." He offered the opinion that, based on his observations, the accumulated bottles and boxes prevented even the lowered heat from circulating in the unit, which contributed to the pipe freezing and then leaking when it was "very, very cold" outside.

¶12    Marquardt does not explain why this was not "actual evidence," and more generally fails to explain why it was clear error for the court to credit this testimony. Absent any argument that the evidence the trial court relied upon was "inherently or patently incredible," I may not substitute my judgment for that of the circuit court. *See **Global Steel Prods. Corp. v. Ecklund Carriers, Inc.**, 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W.2d 269.

¶13    Second, Marquardt argues that the court's finding that she was responsible for extraordinary cleaning costs was "erroneous" because it was not based on "actual evidence." Marquardt also argues that McKean "failed to present evidence to the court regarding the condition of the [unit] when [she] departed." Marquardt asserts that photographs McKean submitted to the court "were taken

six days before [she] left the unit" and that McKean "never submitted photographs or any evidence whatsoever of rodents, insects, abandoned items, mouse droppings, cockroach droppings, ceiling/wall conditions, etc." Marquardt reiterates as an argument testimony that she gave in the circuit court, namely, that she "left the apartment in a cleaner condition than when [she] began occupying it five years prior" and that she "did not even cause normal wear and tear expenses." *See* WIS. ADMIN. CODE § ATCP 134.06(3)(c) (June 2018) (landlords are not authorized to withhold any amount of money from a security deposit "for normal wear and tear" that may reasonably call for routine painting or carpet cleaning).

¶14 Marquardt has not persuaded me that the evidence was insufficient or that the court's finding on this issue was clearly erroneous. Even if the photographs alone were insufficient to establish the unit's condition after Marquardt vacated it, McKean gave direct testimony, credited by the circuit court, about the condition of the unit and the extraordinary cleaning costs required upon Marquardt's departure. Further, Butenhoff testified that "there were cockroaches all over the place" and "all kinds of doo-doo," and that "the place was in pretty bad shape," "[v]ery, very dirty." McKean also submitted an affidavit by Butenhoff explaining what maintenance was performed on the unit after Marquardt left, and an itemized list of labor and supply costs. Marquardt essentially asks me to conclude that her testimony on this issue was more persuasive or credible, which, as I have explained, is insufficient to establish clear error.

¶15 Third, Marquardt argues that McKean took retaliatory action against her by declining to renew her lease and assessing her "excessive and unfounded costs" to clean the unit. Specifically, Marquardt argues that McKean's actions were in retaliation for Marquardt's refusal to pay for water-damage costs for

which she did not believe she was responsible. Citing WIS. STAT. § 704.45 ("Retaliatory conduct in residential tenancies prohibited."), the circuit court held that "it is not retaliatory eviction under Wisconsin law for a landlord to non-renew a lease due to nonpayment by the tenant of amounts due under the lease." *See also* WIS. ADMIN. CODE § ATCP 134.09(5) (June 2018) (listing circumstances which can give rise to a retaliatory eviction). Marquardt does not develop an argument that this was error beyond arguments that I have already rejected as explained above.[3]

¶16    Fourth, Marquardt argues that she should be given "a credit of $900 for the absence of a functioning laundry." Marquardt contended in the circuit court that she did not have a functioning washing machine from September 2014 to September 2017, even though, consistent with the lease, she paid $25 per month on top of other rent in exchange for having a functional washer and dryer in the unit. Marquardt testified that in September 2014, a (now-deceased) maintenance worker advised Marquardt that "it would be best" if she did not use the washing machine until he had "a chance to check on" it. Marquardt testified that she repeatedly asked the maintenance worker when he was going to fix the washing machine, but that management never fixed it. Mark McKean testified that he became aware of a problem with the washing machine in December 2016 at the same time that he became aware of the broken pipe. The court found that the evidence regarding the washing machine was "too muddled" to allow it to make a

---

[3] Given that Marquardt fails to show that the court erred in concluding that McKean's eviction of Marquardt was not retaliatory, I need not address her argument that she is entitled to costs associated with moving due to retaliatory eviction.

proper decision as to whether Marquardt might be entitled to damages on that basis.

¶17     Marquardt's argument on this point is not accompanied by any citation to law or to the record that supports the assertion that she is entitled to $900 (the $25 a month that she paid for use of a washer, over the course of three years) in damages due to the absence of a functioning washing machine. Marquardt may intend to argue that she is entitled to relief under WIS. STAT. § 704.07, which provides that a landlord has a duty to keep "in a reasonable state of repair all equipment under the landlord's control necessary to supply services that the landlord has expressly or impliedly agreed to furnish to the tenant." Sec. 704.07(2)(a)2.  Lack of a functioning washer provided for in a lease is a major inconvenience.  However, pertinent here, § 704.07(2) does not authorize an independent cause of action for a defective condition unless it rises to the level of a health or safety hazard. *Zehner v. Village of Marshall*, 2006 WI App 6, ¶¶29-31, 288 Wis. 2d 660, 709 N.W.2d 64.  Marquardt did not argue to the circuit court, and she does not argue on appeal, that the lack of a functioning washing machine was hazardous to the health or safety of anyone.  Even granting her some leeway as a pro se litigant, I cannot understand whether she intends to invoke this or some other legal theory to support her contentions regarding the washing machine.  I cannot become an advocate for Marquardt and therefore I must reject as insufficiently developed the argument that the circuit court's denial of her counterclaim must be reversed. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals is not required to address issues that are inadequately briefed).

¶18     Fifth, Marquardt argues that she incurred "significant property damage" as a result of McKean's maintenance workers entering her unit to repair

the leaking pipe, as well as through a separate incident of water leaking into her garage, for which she was not responsible. The circuit court found that Marquardt "failed to prove the value of any property claimed to have been damaged by" McKean or that McKean "is responsible for the damage." One problem with Marquardt's argument is that she fails to explain why the court was not free to discredit her testimony that McKean's conduct resulted in damage to her property. The argument also fails for the independent reason that she does not identify any evidence presented to the circuit court that would have supported a finding regarding the value of her allegedly damaged property.

¶19     Throughout her other arguments, Marquardt references the idea that McKean entered her unit without proper notice and cause. Marquardt did not plead as a counterclaim any allegations of illegal entry nor did she fully develop an argument before the circuit court on that point. It is simply too late in the litigation process for her to raise this as a basis to reverse any ruling of the circuit court.

¶20     Turning to McKean's arguments on appeal challenging circuit court rulings, he contends that the circuit court used an incorrect method in computing damages and that the court made an error with regard to the amount of the security deposit. However, McKean was required to file a notice of appeal to properly challenge adverse circuit court rulings. *See* WIS. STAT. RULE 809.10(2)(b) ("A respondent who seeks a modification of the judgment or order appealed from … shall file a notice of cross-appeal."). McKean did not file a notice of appeal or a

notice of cross-appeal. Thus, to the extent that McKean argues for a modification of the circuit court's judgment, those arguments are procedurally barred.[4]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[4] I observe that, if I were to reach the merits of McKean's argument, controlling precedent forecloses McKean's argument that the circuit court used an incorrect calculation method for damages. *See Moonlight v. Boyce*, 125 Wis. 2d 298, 305-06, 372 N.W.2d 479 (Ct. App. 1985) (if landlord fails to provide security deposit accounting within statutory time period, tenant deemed to have suffered pecuniary loss in the amount of the security deposit, regardless of the amount of damages landlord may recover on counterclaim; pecuniary loss is then doubled and awarded to the tenant as damages); *see also Pierce v. Norwick*, 202 Wis. 2d 587, 595, 550 N.W.2d 451 (Ct. App. 1996) ("the method of damages calculation outlined in *Moonlight* should be confined to those instances where a landlord retains a security deposit and fails to provide an itemization of damages").